HOUCHINS, SHERIFF OF THE COUNTY OF
ALAMEDA, CALIFORNIA *v.* KQED,
INC., ET AL.

No. A–594. Decided February 1, 1977

MR. JUSTICE REHNQUIST, Circuit Justice.

Applicant Houchins is the Sheriff of Alameda County in the State of California and in that capacity controls access of the press and public to the Alameda County jail. Respondents KQED, Inc., a nonprofit educational television-radio station, and the Alameda and Oakland branches of the NAACP, sued applicant in the United States District Court for the Northern District of California in order to obtain an injunction granting KQED personnel access to the Alameda County jail at Santa Rita. The District Court granted respondents a preliminary injunction on November 20, 1975, which restrained applicant

> "from excluding as a matter of general policy plaintiff KQED and responsible representatives of the news media from the Alameda County Jail facilities at Santa Rita, including the Greystone portion thereof, or from preventing KQED and responsible representatives of the news media from providing full and accurate coverage of the conditions prevailing therein.

". . . [F]rom denying KQED news personnel and responsible representatives of the news media access to the Santa Rita facilities, including Greystone, at reasonable times and hours.

". . . [F]rom preventing KQED news personnel and responsible representatives of the news media from utilizing photographic and sound equipment or from utilizing inmate interviews in providing full and accurate coverage of the Santa Rita facilities.

". . . [Applicant] may, in his discretion, deny KQED and responsible representatives of the news media access to the Santa Rita facilities for the duration of those limited periods when tensions in the jail make such media access dangerous."

Applicant sought a stay of this order in the Court of Appeals for the Ninth Circuit, and a two-judge panel of the court granted the stay on December 24, 1975, observing:

"[T]he injunction appears to exceed the requirements of the First Amendment as interpreted in *Pell* v. *Procunier,* 417 U. S. 817 (1974) and *Saxbe* v. *Washington Post Co.,* 417 U. S. 843 (1974). Should the injunction be modified by the District Court, this Court will entertain a motion to lift the stay."

Applicant's appeal was thereafter heard by a different panel of the Court of Appeals which affirmed the order of the District Court. Applicant filed a petition for rehearing and suggestion for rehearing en banc, and a motion for stay of mandate, all of which were denied. He now requests that I stay the injunction pending the filing and disposition of a petition for certiorari to review the judgment of the Court of Appeals. For the reasons set forth below, I grant his application.

The dispute between the parties centers upon questions of law, rather than of fact. The principal dispute involves the

interpretation of our opinion in *Pell* v. *Procunier,* 417 U. S. 817 (1974). Applicant would urge that we reach the same result in this case as we did in *Saxbe* v. *Washington Post Co.,* 417 U. S. 843, 850 (1974):

> "We find this case constitutionally indistinguishable from *Pell* v. *Procunier, ante,* p. 817, and thus fully controlled by the holding in that case. '[N]ewsmen have no constitutional right of access to prisons or their inmates beyond that afforded the general public.' *Id.,* at 834."

Respondents, on the other hand, rely upon the Court's observation at the outset of the opinion in *Pell* that the prison regulation there involved was

> "not part of an attempt by the State to conceal the conditions in its prisons or to frustrate the press' investigation and reporting of those conditions. Indeed, the record demonstrates that, under current corrections policy, both the press and the general public are accorded full opportunities to observe prison conditions. . . . In short, members of the press enjoy access to California prisons that is not available to other members of the public." *Pell, supra,* at 830–831. (Footnote omitted.)

Concededly the access of the public and the press to the Alameda County jail is less than was their access to the California prisons in *Pell.* Public access to the Alameda County jail at Santa Rita presently consists of monthly public tours which, in the words of the Court of Appeals, "were limited to 25 people, booked months in advance, prohibited use of cameras or sound equipment, prohibited conversations with inmates, and omitted views of many parts of the jail, including the notorious Greystone Building." Here the injunction did grant to the press greater[1] access to the jail than the public is granted, a result seemingly inconsistent with our

---

[1] See 546 F. 2d 284, 294 (CA9 1976) (Duniway, J., concurring).

holding [2] in *Pell* that the press is not entitled to greater access. But respondents suggest that the access given to the press in this case by the injunction may, as a factual matter, not significantly exceed that given to the press in *Pell* before the injunction and after our disposition of that case.

The Court of Appeals struggled with the resolution of this issue. Judges Chambers and Sneed, in granting the stay before argument, felt that the injunction went beyond that which we countenanced in *Pell*. The panel that decided the issue on the merits unanimously affirmed the District Court, but each member of the panel wrote separately. In discussing the injunction, which he felt clearly granted the press greater access than is granted to the public, Judge Duniway, in his concurring opinion, was moved to conclude:

> "I cannot reconcile this result [the injunction] with the decisions in *Pell, supra,* and *Washington Post, supra.*" 546 F. 2d 284, 294 (CA9 1976).

Judge Hufstedler, concurring specially, viewed the reconciliation of the injunction in this case with the holdings in *Pell* and *Washington Post* as a "thorny question." *Id.,* at 19.

The legal issue to be raised by applicant's petition for certiorari seems quite clear. If the "no greater access" doctrine of *Pell* and *Saxbe* applies to this case, the Court of Appeals and the District Court were wrong, and the injunction was an abuse of discretion. If, on the other hand, the holding in *Pell* is to be viewed as impliedly limited to the situation where there already existed substantial press and public access to the prison, then *Pell* and *Saxbe* are not necessarily dispositive, and review by this Court of the propriety of the injunction, in light of those cases, would be appropriate, although not necessary. In my opinion at least four Justices of this Court would vote to grant certiorari to resolve this

---

[2] See *Saxbe* v. *Washington Post Co.,* 417 U. S., at 850.

issue, if for no other reason than that departure from unequivocal language in one of our opinions which on its face appears to govern the question ought to be undertaken in the first instance by this Court, rather than by the Court of Appeals or by the District Court.

Of course, I accord due deference to the judges of the Ninth Circuit who declined to grant the stay. See *Winters* v. *United States*, 89 S. Ct. 57, 21 L. Ed. 2d 80 (1968) (Douglas, J., in chambers). But such deference does not relieve me of the obligation to decide the issue:

> "Although a judge of the panel which entered this order refused to grant a stay, I would nevertheless stay the order if persuaded by the record that the questions presented for review in the petition for certiorari had sufficient merit to make review by this Court likely." *Board of School Comm'rs of Mobile County* v. *Davis*, 84 S. Ct. 10, 11, 11 L. Ed. 2d 26, 27 (1963) (Black, J., in chambers).

For the reasons set forth above, I think that the issue in this case is of sufficient importance to surmount the threshold barrier confronting all stay applications: reasonable likelihood that the petition for certiorari will be granted. *E. g.*, *English* v. *Cunningham*, 80 S. Ct. 18, 4 L. Ed. 2d 42 (1959) (Frankfurter, J., in chambers).

Respondents suggest that, regardless of the correctness of the decision below, the equities do not favor the applicant, and that it is they, the respondents, who will suffer the irreparable injury should a stay be granted. Respondents contend that they are irreparably injured each time they are denied news coverage; applicant suggests that in the District Court hearing "there was uncontradicted evidence that jail operations come to a virtual standstill in the presence of a media tour." Respondents' intimation that the interim denial of their access to the prison, in violation of their asserted First and Fourteenth Amendment rights, will inexor-

ably injure them in a way that applicant cannot be injured by the injunctive restraint—which he asserts is based on a misapprehension of the Constitution—is one with which I cannot agree. There are equities on both sides of the case.

I would be more hesitant to disturb the District Court's preliminary injunction if it were evident that the injunction were actually "preliminary" to substantial further proceedings which might substantially modify that injunction. But the injunction was issued some 15 months ago, after a full evidentiary hearing, and none of the parties suggests that there are any new factual or legal issues which would cause the District Court to modify it. The injunction has in fact been stayed virtually since its issuance, and I conclude that, in light of the present posture of the case and given the substantial chance that the petition for certiorari will be granted, the preservation of that status quo is an important factor favoring a stay. This is preferable to forcing the applicant to develop new procedures which might be required only for a short period of time. See *Edelman* v. *Jordan,* 414 U. S. 1301, 1303 (1973) (REHNQUIST, J., in chambers).

The preliminary injunction issued by the District Court in this case on November 20, 1975, should therefore be and hereby is stayed pending the filing of a timely petition for certiorari by applicant, and the disposition of the petition and the case by this Court.