**CEMENTOS ANAHUAC DEL GOLFO, S.A., Plaintiff,**

v.

**UNITED STATES, and Malcolm Baldrige, Secretary of Commerce, Defendants.**

**Court No. 86-01-00082.**

United States Court of International Trade.

Nov. 24, 1989.

Ross & Hardies, Joseph S. Kaplan, New York City, and Michelle F. Forte, for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., Velta A. Melnbrencis, New York City, for defendants.

## MEMORANDUM & ORDER

AQUILINO, Judge:

This case was remanded to the International Trade Administration, U.S. Department of Commerce ("ITA") for reconsideration of its first administrative review of its *Final Affirmative Countervailing Duty Determination and Countervailing Duty Order; Portland Hydraulic Cement and Cement Clinker from Mexico*, 48 Fed.Reg. 43,063 (Sept. 21, 1983), in the light of the court's slip op. 88-58, 12 CIT ——, 687 F.Supp. 1558 (1988), which held that no countervailing duties could be imposed upon entries of the indicated merchandise for the period July 1 through December 31, 1983 unless it was determined that those entries, by reason of subsidy, were causing or threatening to cause material injury to an industry in the United States or that they retarded materially the establishment of an industry in the United States. The court's order of remand also enjoined the defendants from imposing duties on the entries in the absence of a determination of such injury.

The defendants appealed from the order, which was reversed by the U.S. Court of Appeals for the Federal Circuit *sub nom. Cementos Guadalajara, S.A. v. United States*, 879 F.2d 847 (1989). A petition for rehearing, including a suggestion that it occur *en banc*, was then filed. The original three-judge panel denied rehearing by it

in an order which also indicated that the court's mandate would issue on September 19, 1989. Prior thereto, the plaintiff-appellee sought (and obtained) a stay of the mandate until seven days after the still-outstanding suggestion of rehearing by the full court had been resolved, but, in an order dated October 19, 1989, the suggestion was declined, and the judgment of the court of appeals issued as a mandate on October 26, 1989.

The plaintiff has now returned with an application to extend this court's injunction of liquidation upon a representation that it intends to petition the Supreme Court of the United States for a writ of certiorari. A hearing was held on November 16, 1989 in this case and also in cases before Judge Carman of this Court of International Trade *sub nom. Cementos Guadalajara, S.A. et al. v. United States*, No. 86–12–01525, and *Cementos Anahuac del Golfo, S.A. v. United States*, No. 86–12–01607 [1], in which similar applications were presented.

I

The defendants vigorously contest the application(s). They argue, for example, that it is

well established that an inferior court has no power or authority to deviate from the mandate issued by an appellate court. A lower court cannot vary the mandate or give any further relief. A mandate must be interpreted in accordance with the context of the proceedings. A lower court can only consider and de-

cide matters of record before the appellate court, and the law of the case, as decided by the appellate court, "comprehends things decided by necessary implication as well as those decided explicitly." [2]

As shown in defendants' memorandum, there is ample precedent to support each of these points. The "hope" of this law, as indicated, for example, by the court in *Litman v. Massachusetts Mutual Life Insurance Co.*, 825 F.2d 1506, 1512 (11th Cir. 1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 700, 98 L.Ed.2d 652 (1988), is "finality". That goal was achieved upon entry of the final judgments in the cases before Judge Carman and their subsequent affirmance on appeal.

In this case, on the other hand, the defendants appealed from the remand order, which was interlocutory. The decision of that appeal necessarily led to return of the case to the jurisdiction of this court upon issuance of the circuit mandate. Hence, the court is seized not only with the authority and the obligation to implement in an orderly manner the judgment of the court of appeals as it pertains to this court's interlocutory order, but also to grant such other and further relief as justice may require. *Cf. Cementos Guadalajara, S.A. v. United States*, *supra* note 1. Indeed, in this case, the defendants had agreed to suspension of liquidation, which was granted on October 21, 1987, and the effect of the subsequent remand order has been to

---

**1.** Final judgments entered in those cases were affirmed by the court of appeals in the same decision reversing this court's remand order and reported at 879 F.2d 847. Since then, the timing, but not the status, of those cases has been the same as the case at bar. *See generally Cementos Guadalajara, S.A. v. United States*, 13 CIT ——, 727 F.Supp. 614 (1989), which denied the applications for injunctive relief submitted therein.

**2.** Defendants' Supplemental Memorandum, pp. 12–13, footnotes omitted save that part of footnote number 11 which quotes *Litman v. Massachusetts Mutual Life Insurance Co.*, 825 F.2d 1506, 1511–12 (11th Cir.1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 700, 98 L.Ed.2d 652 (1988), as follows:

The mandate rule is simply an application of the law of the case doctrine to a specific set of facts.... Each tier in the judicial hierarchy has its responsibility once a mandate is issued.

\* \* \* \* \* \*

When an appellate court issues a specific mandate it is not subject to interpretation; the district court has an obligation to carry out the order. A different result would encourage and invite district courts to engage in *ad hoc* analysis of the propriety of appellate court rulings. Post mandate maneuvering in the district courts would undermine the authority of appellate courts and create a great deal of uncertainty in the judicial process. It would also eliminate any hope of finality.

continue the suspension [3], pending ITA reconsideration of its first administrative review or pursuit of any appeal.

## II

The government has often consented to suspension of liquidation of entries covered by actions seeking judicial review of ITA determinations made pursuant to 19 U.S.C. § 1675 since the decision in *Zenith Radio Corporation v. United States*, 710 F.2d 806, 810 (Fed.Cir.1983), which concluded that, in a case like the one at bar, "the consequences of liquidation do constitute irreparable injury" in the context of obtaining meaningful relief after full exercise of the right to judicial review, including, of course, appeal. In other words, suspension of liquidation can be necessary for the preservation of jurisdiction.

Notwithstanding the government's past acquiesence in suspension in this case, and in others until finally resolved, the defendants now oppose extension of suspension herein. As for the regular requirements for grant of such extraordinary equitable relief, as enumerated, for example, in *S.J. Stile Associates Ltd. v. Snyder*, 646 F.2d 522, 525, 68 C.C.P.A. 27 (1981), and *Cambridge Lee Industries, Inc. v. United States*, 13 CIT ——, 725 F.Supp. 543, 544 (1989), cash apparently has been deposited with the government on behalf of the plaintiff to cover any countervailing duties that may be owed on the entries in question. This fact diminishes defendants' ability to show a balance of hardship in their favor— particularly in the face of the irrevocable act that essentially is liquidation. The existence of the deposit(s) also implies protection of the public interest. Moreover, as was pointed out in slip op. 88–58, "the overriding concern this case touches upon is continuation and enhancement of long-standing, friendly relations between the United States of America and of Mexico." 12 CIT at ——, 687 F.Supp. at 1561. Surely, this being the concern, it is in the public interest to permit the plaintiff a full and fair opportunity to present its position to this country's court of last resort. And, as the Federal Circuit recognized in its *Zenith* decision, *supra*, to permit liquidation to be carried out before an appeal with potential impact thereon has run its course can leave a successful appellant with a Pyrrhic victory, a court judgment of little moment. In short, the present facts and circumstances of this case clearly support plaintiff's position on these traditional counts, and this and other courts have held that the remaining requisite showing of likelihood of success on the merits is in "inverse proportion to the severity of the injury the moving party will sustain without injunctive relief." *Smith Corona Corporation v. United States*, 11 CIT ——, ——, 678 F.Supp. 285, 293 (1987). *See, e.g., Ceramica Regiomontana, S.A. v. United States*, 7 CIT 390, 395, 590 F.Supp. 1260, 1264 (1984); *American Air Parcel Forwarding Company v. United States*, 1 CIT 293, 300, 515 F.Supp. 47, 53 (1981).

The merits here are of notable consequence. Whether a nation which becomes a "country under the Agreement" within the meaning of 19 U.S.C. § 1671(b) is then entitled to an injury determination by the International Trade Commission pursuant to section 1671(a) even as to pre-existing, unliquidated entries before countervailing (or antidumping) duties can be imposed on them is one of the most important issues to confront this Court of International Trade and the Federal Circuit since passage of the Trade Agreements Act of 1979.

The defendants argue that the merits are whether or not the Supreme Court would grant plaintiff's projected petition for a writ. They quote the decision of then Justice Rehnquist, sitting as Circuit Justice, in *Houchins v. KQED, Inc.*, 429 U.S. 1341, 1345, 97 S.Ct. 773, 775, 50 L.Ed.2d 733 (1977), that "the threshold barrier confronting all stay applications [is] reasonable likelihood that the petition for certiorari will be granted" and also Circuit Justice Marshall's analogous opinion in *Brennan v.*

---

**3.** At the hearing, defendants' counsel agreed that this long-standing injunction remains in full force and effect. *See* transcript, pp. 44, 58.

*United States Postal Service,* 439 U.S. 1345, 99 S.Ct. 22, 58 L.Ed.2d 51 (1978), that the

> well-established criteria for granting a stay are "that the applicants must show 'a balance of hardships in their favor' *and* that the issue is so substantial that four Justices of this Court would likely vote to grant a writ of certiorari."

439 U.S. at 1346, 99 S.Ct. at 23 (emphasis in original), *quoting New York Times Co. v. Jascalevich,* 439 U.S. 1331, 1337, 99 S.Ct. 11, 15, 58 L.Ed.2d 38 (1978). If this is the immediate issue, of course this court is not competent to opine as to whether or not the requisite number of justices would vote to place plaintiff's issue on their crowded docket for plenary review. All that this court can state is that that substantive issue is anything but frivolous. Obviously, if it were of no import, the court would have no difficulty denying now plaintiff's application, notwithstanding the satisfaction of the other prerequisites for grant thereof.

### III

Applications like the one at bar seek to preserve the status quo. In this case, that status has included suspension of liquidation—since the defendants first agreed thereto more than two years ago. As for the present and the immediate future, the 90–day period prescribed by 28 U.S.C. § 2101(c) and Supreme Court Rule 20.2 for filing of a petition for certiorari in a case such as this is well along. Upon receipt of a petition, a party desiring to respond may do so within 30 days. Sup.Ct.Rule 22.1. At that time, the papers "will be distributed by the Clerk to the Court for its consideration". *Id.* at 22.4. History teaches that the

> Court usually takes up the case at the Friday conference about two weeks later. The Court announces its ruling on petitions on the Monday following the conference at which they are discussed by the Justices, unless consideration of a

petition is deferred to the following conference. The Clerk promptly notifies counsel for the parties by mail.[4]

Hence, the time is growing short for disposition of any writ petition by the plaintiff to occur. And, if granted, history also indicates that the case would be heard and decided in an expeditious manner.

Nevertheless, the defendants argue that, if plaintiff desired to obtain a stay pending its application for a writ of certiorari, it was obligated to proceed, pursuant to Rule 41 of the Federal Rules of Appellate Procedure and Supreme Court Rule 44, to apply for a stay in the Court of Appeals for the Federal Circuit or in the Supreme Court. If plaintiff lost the opportunity to seek a stay from the appellate court, it did so through its own fault. In any event, plaintiff still has the opportunity to seek a stay from a Justice of the Supreme Court pursuant to Supreme Court Rule 44. It should not be permitted to circumvent the Federal Rules of Appellate Procedure and the Rules of the Supreme Court by its present "motion to extend injunction." [5]

This position has obvious merit, although Federal Rule of Appellate Procedure 8(a), itself, states:

> Application for a stay of the judgment or order of a district court pending appeal, or for approval of a supersedeas bond, or for an order suspending, modifying, restoring or granting an injunction during the pendency of an appeal *must ordinarily be made in the first instance in the district court.* [emphasis added]

In a similar vein, Supreme Court Rule 44.4 provides:

> An application for a stay or injunction to a Justice of this Court shall not be entertained, except in the most extraordinary circumstances, *unless application for the relief sought first has been made to the appropriate court below, or to a judge or judges thereof.* [emphasis added]

---

**4.** Stern, Gressman & Shapiro, Supreme Court Practice, p. 398 (6th ed. 1986) (footnote omitted).

**5.** Defendants' Memorandum in Opposition to Plaintiff's "Motion to Extend Injunction", p. 11 (footnotes omitted).

Plaintiff's is just such an application, and Circuit Justice Rehnquist has pointed out:

> ... Whatever the current application of the so-called jurisdictional shift theory to modern appellate procedure, it is well settled that a court retains the power to grant injunctive relief to a party to preserve the status quo during the pendency of an appeal, even to this Court.

*Hawaii Housing Authority v. Midkiff,* 463 U.S. 1323, 1324, 104 S.Ct. 7, 8, 77 L.Ed.2d 1426 (1983), *citing Newton v. Consolidated Gas Co.,* 258 U.S. 165, 177, 42 S.Ct. 264, 267, 66 L.Ed. 538 (1922); *Merrimack River Savings Bank v. Clay Center,* 219 U.S. 527, 531–35, 31 S.Ct. 295, 295–96, 55 L.Ed. 320 (1911); and Federal Rule of Civil Procedure 62.

Of course, it is equally well settled that an unsuccessful party on appeal should seek a stay from the court of appeals of its mandate pending any review on certiorari. The record here reveals that the plaintiff-appellee sought, and did obtain, such relief in regard to its suggested rehearing *en banc,* but that it has failed to seek any further stay from that forum once the suggestion had been declined.[6] In any event, by that time the plaintiff-appellee had had more than 90 days to contemplate the three-judge panel's decision on July 13, 1989. In this setting, it is appropriate to repeat the conclusion reached in *Cementos Guadalajara, S.A. v. United States,* 13 CIT at ——, 727 F.Supp. 614, 619–620, to wit:

> ... [A]ny hardship the decision of this Court bestows upon the plaintiffs in this case results from plaintiffs' own acts. While before the Federal Circuit plaintiffs availed themselves of Fed.R.App.P. 41(a) to obtain a stay of the issuance of the mandate pending their applications for a rehearing or en banc review. It would have been appropriate at that time to seek relief in the form of a stay pending review on certiorari under Fed.R. App.P. 41(b). Plaintiffs have advanced no reasons to this Court why they could not have petitioned the Federal Circuit

for the stay. Even after the Appeals Court decision and the issuance of the mandate, plaintiffs still had the opportunity to petition for recall of the mandate upon a showing of good cause. *See e.g., Johnson v. Bechtel Assocs. Professional Corp.,* 801 F.2d 412, 416 (D.C.Cir.1986) (and citation therein at notes 19 and 20). Additionally, after the issuance of this memorandum and order, it would appear that plaintiffs are not precluded from obtaining relief in superior courts. [footnote omitted]

Although the status quo of this case is different from that in *Guadalajara,* including the fact that the injunction suspending liquidation is still in full force and effect, the clear implication of the mandate of the Federal Circuit is that the injunction be vacated and the case dismissed. Equally clear is the court's obligation to carry out that mandate in an orderly manner. Thus, this court is unable to conclude that it is at liberty to extend, without the concurrence of a higher court, the injunction for the entire length of time the plaintiff presumably requires to obtain a writ of certiorari from the Supreme Court.

On the other hand, on November 15, 1989 this court was empowered to and did grant, in an exercise of caution, plaintiff's application for a temporary restraining order, pending the hearing. The parties' able presentations at the hearing convinced the court that that order was unnecessary in this case, but the CIT Rule 65(b) provision that the court has authority to extend temporary restraints for a second 10–day period "for good cause shown" on the record is still a useful guide on the question of length of time. Since such good cause is shown, as discussed hereinabove, it is

ORDERED that plaintiff's Motion to Extend Injunction be, and it hereby is, granted to the extent that the court's order dated May 12, 1988 and issued in conjunction with slip op. 88–58, 12 CIT ——, 687 F.Supp. 1558 will remain in full force and

---

6. At the hearing, the parties stipulated that the plaintiff first had notice of the declination on

October 23, 1989.

effect until the close of business on December 4, 1989, after which date this court will vacate the injunction, unless ordered otherwise by another court; in all other respects, plaintiff's motion is denied.