Robert Paul REYNOLDS *v.* STATE of Arkansas

CR 98-1184

18 S.W.3d 331

Supreme Court of Arkansas
Opinion delivered May 25, 2000

*Robert McCorkindale,*
Judge;

*Richard R. Parker,* Public Defender, for appellant.

*Mark Pryor,* Att'y Gen., by: *Vada Berger,* Ass't Att'y Gen., for appellee.

R AY THORNTON, Justice. Appellant Robert Paul Reynolds was convicted of first-degree murder and sentenced to life imprisonment for the shooting death of his neighbor, Michael Ramsey. Reynolds's counsel filed a no-merit brief on appeal, and we affirmed the conviction and sentence in *Reynolds v. State,* No. CR 95-1343, slip op. (Ark., May 13, 1996)*(per curiam).*

Reynolds subsequently filed a petition for postconviction relief pursuant to Arkansas Criminal Procedure Rule 37, raising two claims of ineffective assistance of counsel. The Boone County Circuit Court denied relief. Reynolds now appeals from that order, and, because we agree that the failure to object to erroneous jury instructions amounted to a denial of the Sixth Amendment right to effective counsel, we reverse the trial court's findings and remand the case for a new trial.

The sufficiency of the evidence was not challenged on direct appeal or in the postconviction proceedings; the testimony was uncontradicted that Reynolds fired five shots from a semi-automatic rifle at his victim as he drove past Reynolds's house. At trial, Reynolds's defense was insanity: that at the time of the killing, as a result of mental disease or defect, he lacked the capacity to conform his conduct to the requirements of law or to appreciate the criminality of his conduct. See Ark. Code Ann. § 5-2-312 (Repl. 1997). Reynolds was charged with the crimes of first-and second-degree murder as well as manslaughter, and the jury returned a verdict of guilty of murder in the first degree. The erroneous instruction given to the jury on the first-degree murder charge was:

> Robert Reynolds is charged with the offense of murder in the first degree. To sustain this charge, the State must prove beyond a reasonable doubt that Robert Reynolds, with the purpose of causing the death of *or serious physical injury to* Michael Ramsey, did cause the death of Michael Ramsey.
>
> A person acts with the purpose with respect to his conduct or a result thereof when it is his conscious object to engage in conduct of that nature or to cause such a result.
>
> Serious physical injury means physical injury that created a substantial risk of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of any function of any bodily member or organ (emphasis supplied).

This instruction does not require proof of the elements of the crime of first-degree murder in order to convict a person of that crime.

The pertinent elements of first-degree murder are set out in Ark. Code Ann. § 5-10-102 (Repl. 1997) as follows:

> (a) A person commits murder in the first degree if:

\* \* \* \* \*

 (2) With a purpose of *causing the death* of another person, he causes the death of another person....

*Id.*

By contrast, the required pertinent elements of second-degree murder are set out in Ark. Code Ann. § 5-10-103 (Repl. 1997) as follows:

 (a) A person commits murder in the second degree if:

\* \* \* \* \*

 (2) With the purpose of *causing serious physical injury* to another person, he causes the death of any person....

*Id.* (emphasis added). As given to the jury, this instruction would allow a conviction of first-degree murder to be rendered upon proof of only the elements required for a conviction of second-degree murder. Rather than allowing a choice between a conviction of first-degree murder or of the lesser offense of second-degree murder, the jury was instructed that it could convict Reynolds of first-degree murder upon a finding that the purpose required for second-degree murder had been proven. This erroneous instruction would allow Reynolds to be convicted of first-degree murder upon proof that his purpose was to cause "serious physical injury." The fundamental issue presented to us in this appeal from the denial of a Rule 37 petition is whether counsel's failure to object to the erroneous instruction, or to bring the issue forward on direct appeal, constituted a deficient performance that so prejudiced Reynolds that he was deprived of a fair trial.

 ■ ■ Postconviction proceedings under Rule 37 provide a remedy against unjust imprisonment. The rule enables our courts to correct a manifest injustice. As we have stated, Rule 37 is a narrow remedy designed to prevent wrongful incarceration under a sentence so flawed as to be void. *Nooner v. State*, 339 Ark. 253, 4 S.W.3d 497 (1999). We will not reverse the trial court's decision granting or denying postconviction relief unless it is clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence

is left with the definite and firm conviction that a mistake has been committed. *Id.*

■ The criteria for assessing the effectiveness of counsel were enunciated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), which provides that when a convicted defendant complains of ineffective assistance of counsel he must show that counsel's representation fell below an objective standard of reasonableness and that but for counsel's errors the result of the trial would have been different. *Id.* We have adopted the rationale of *Strickland* and held that:

> To prevail on any claim of ineffective assistance of counsel, the petitioner must show first that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. Secondly, the petitioner must show that the deficient performance prejudiced the defense, which requires a showing that counsel's errors were so serious as to deprive the petitioner of a fair trial.

Thomas v. State, 330 Ark. 442, 954 S.W.2d 255 (1997).

■ ■ Here, the trial court found, and the State does not contest, that an erroneous instruction of the law was given to the jury. The failure of Reynold's counsel to object to the flawed instruction was a deficient performance of his duties as counsel. We then must ask whether the deficient performance prejudiced the defense. In *Hall v. State*, 326 Ark. 318, 933 S.W.2d 363 (1996), we held that in cases involving a trial court's giving of an erroneous instruction in cases involving the trial mechanism, "we will not require the appellant to demonstrate prejudice." *Id.* In the case before us, it is apparent that counsel's deficient performance in not objecting to the erroneous instruction prejudiced the defense, because the jury was given an erroneous instruction that Reynolds could be found guilty of first-degree murder based upon a finding of a purpose to cause serious physical injury, as required for the crime of second-degree murder.

■ The next question is whether these errors were so serious as to deprive Reynolds of a fair trial. In *Thomas v. State, supra,* we said:

In reviewing the denial of relief under Rule 37, this court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The petitioner must show that there is a reasonable probability that, but for counsel's errors, the factfinder would have had a reasonable doubt respecting guilt in that the decision reached would have been different absent the errors. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial (citations omitted).

*Id.*

 Here, the jury was given the elements of second-degree murder and instructed that it could find Reynolds guilty of first-degree murder based upon those elements. We have expressed the distinction between the analysis that takes place on direct appeal when an erroneous instruction is submitted to the jury, and the analysis that we apply to evaluate an ineffective assistance of counsel claim. *Sasser v. State,* 338 Ark. 375, 993 S.W.2d 901 (1999). On direct appeal from a case involving an erroneous instruction, the "harmless error" standard of review is appropriate, but in a postconviction challenge we must also consider whether, but for counsel's error, there is a "reasonable probability" that the outcome of the trial would be different. *See Thomas, supra.*

In *Hall,* a case involving a postconviction challenge, we concluded that the defendant had failed to show that but for his counsel's deficient performance, the jury would have reached a different decision. There we considered multiple instructions on charges including capital murder, second-degree murder, and other lesser charges. We cited with approval the language of the Eighth Circuit in *United States v. West,* 28 F.3d 748 (8th Cir. 1994):

> This court's precedent ... highlights the importance of reviewing an allegedly faulty jury instruction in context with the entire jury charge and the entire trial. *See United States v. McMillan,* 820 F.2d 251, 256 (8th Cir.), *cert. denied,* 484 U.S. 898, 108 S.Ct. 234, 98 L.Ed.2d 193 (1987). In *McMillan,* this court examined a criminal jury instruction that, if viewed in isolation, appeared to remove one element of the government's burden of proof. *Id.* Nevertheless, this court determined that two other proper jury instructions and the context of the whole trial corrected any error in the isolated erroneous instruction, and thus the jury charge as a whole properly conveyed the government's burden to the jury.

*Id.* We also observed that *Hall*, as well as the cases *Cates v. Brown*, 278 Ark. 242, 645 S.W.2d 658 (1983) and *Moore v. State*, 252 Ark. 526, 479 S.W.2d 857 (1972), involved circumstances where "the erroneous instruction was obviously cured by other instructions." *Id.*

Similarly, in *Sasser*, we pointed out the distinction between that case and the facts in *Sullivan v. Louisiana*, 508 U.S. 275 (1993), which dealt with a structural defect in the constitution of the trial mechanism, more particularly an erroneous instruction upon the State's burden of proof. In *Sullivan* the Court determined that the harmless-error standard of review could not be applied because to do so would force the appellate court, inappropriately, to speculate about what a jury would have done, had it been properly instructed. *Id.* In *Sasser*, we distinguished *Sullivan* because, in *Sasser*, there were multiple instructions, and the error was not so serious as to deprive the appellant of a fair trial and a reliable finding of guilt. *Id.*

 In the case before us, instructions as to what elements must be proven to support a conviction for first-degree murder were flawed, not by omission of a required element for such a conviction, but by the addition of a specific instruction allowing the conviction for first-degree murder to be rendered upon the proof of only that lesser intent required for second-degree murder. For us to decide that there might have been sufficient evidence to support a conviction of the greater crime would deprive Reynolds of his right to a trial by jury on the charge of first-degree murder. Due process requires that an "accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. 6. The United States Supreme Court, in *United States v. Gaudin*, 515 U.S. 506 (1995), stated that:

> We have held that these provisions require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.

*Id. (citing Sullivan, supra).* The *Gaudin* Court continued: "The Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged...." *Id.*

In the case *sub judice*, the jury was not required to decide whether Reynolds caused the death of another based upon his intent to cause another's death. We can only speculate how the jury would have resolved this question if it had been instructed to do so. However, we recognize that the jury might have based its conviction for first-degree murder upon findings of only the elements required for second-degree murder.

It is not necessary for us to decide whether this error was such a fundamental structural error that it would be inappropriate to even conduct a harmless-error analysis. Here the flawed instruction was not corrected or rendered harmless by other instructions as in *Hall, supra*, or *Sasser, supra*. Unlike those cases, the error here is not the omission of an element of the crime but the addition of an instruction that specifically allows conviction upon a lesser showing of intent, thereby denying Reynolds the right to a jury trial on the elements upon which a conviction for first-degree murder must be predicated.

An accused has the right to a jury verdict beyond a reasonable doubt on the elements of the crime. *See Gaudin, supra*. In *Sullivan*, the Supreme Court wrote the following: "The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in the trial was surely *unattributable* to the error." *Id., (citing Rose v. Clark*, 478 U.S. 570 (1986)) (emphasis added).

Because of the flawed instruction, the State was relieved of the responsibility to prove beyond a reasonable doubt every element of the crime of first-degree murder. As recognized by the Arkansas Court of Appeals in *Beasley v. State*, 29 Ark. App. 104, 777 S.W.2d 865 (1989), an erroneous modification of a model jury instruction "telling the jury that actual ownership was not necessary to convict appellant on the possession of firearm charge was prejudicial and warrants reversal...." *Id.* To the same effect see Justice Scalia's concurring opinion in *California v. Roy*, 519 U.S. 2 (1996), where he states:

> As we held in *Sullivan v. Louisiana*, [supra] a criminal defendant is constitutionally entitled to a jury verdict that he is guilty of the crime, and absent such a verdict the conviction must be reversed, "no matter how inescapable the findings to support that

verdict might be." A jury verdict that he is guilty of the crime means, of course, a verdict that he is guilty of each necessary element of the crime. Formally, at least, such a verdict did not exist here: The jury was never asked to determine that Roy had the "intent or purpose of committing, encouraging, or facilitating" his confederate's crime.

The absence of a formal verdict on this point cannot be rendered harmless by the fact that, given the evidence, no reasonable jury would have found otherwise. To allow the error to be cured in that fashion would be to dispense with trial by jury.

*Id.* (citations omitted).

We hold that the trial court's finding denying Reynolds postconviction relief based on ineffective assistance of counsel was clearly erroneous. Counsel's failure to object to the erroneous instruction allowing conviction for first-degree murder upon proof of only the elements required for a conviction of second-degree murder is sufficient to undermine confidence in the outcome of the trial, and establishes a reasonable probability that the outcome of the trial would have been different but for counsel's deficient performance. The erroneous instruction was not an error of omission cured or corrected by other charges to the jury so as to properly convey the State's burden to the jury. Accordingly, we set aside Reynolds's conviction and sentence without addressing his remaining allegations of error, remanding this case for a new trial.

Reversed and remanded.

BROWN, J., not participating.