Marcel Wayne WILLIAMS *v.* STATE of Arkansas

CR 00-822 64 S.W.3d 709

Supreme Court of Arkansas
Opinion delivered January 17, 2002

*William A. McLean*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Michael C. Angel*, Ass't Att'y Gen., for appellee.

W.H. "DUB" ARNOLD, Chief Justice. Marcel Williams was found guilty of capital murder and sentenced to death. We affirmed his conviction and sentence in *Williams v. State*, 338 Ark. 97, 991 S.W.2d 565 (1999). Williams subsequently filed a petition for postconviction relief in the trial court pursuant to Arkansas Rule of Criminal Procedure 37, alleging ineffective assistance of counsel. The trial court denied the petition. On appeal, Williams asserts that the trial court erred in finding that he received effective assistance of counsel in the penalty phase of his jury trial. He contends that his trial counsel was ineffective for failing to introduce mitigation evidence concerning his troubled youth and asserts that the trial court should have vacated his death sentence and ordered a new sentencing phase of the trial. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(8). We find no error and affirm.

In considering Williams's appeal, it is unnecessary to repeat all the facts and evidence previously detailed in *Williams v. State*, 338 Ark. 97, 991 S.W.2d 565 (1999). The record reflects that the trial court appointed two attorneys to represent Williams in his original trial: Herbert Wright and Phillip Hendry. The two attorneys recruited the assistance of Bill James, who also participated in Williams's defense but was not appointed by the court. After a jury trial, Williams was found guilty of all charges and convicted of the capital murder of Stacy Errickson. Following the sentencing phase of his trial, Williams was sentenced to death by lethal injection.

At his Rule 37 hearing, Williams asserted only one ground for relief. He alleged that his trial counsel rendered ineffective assistance in the penalty phase of his trial by failing to properly investigate mitigating evidence and present such evidence to the jury during the sentencing phase of his trial. The record reflects that all three members of Williams's trial counsel testified it was their strategy to gain credibility with the jury, in the face of overwhelming evidence of Williams's guilt, by admitting guilt to the jury and seeking mercy through a punishment of life without parole. In an effort to obtain potentially mitigating evidence, counsel ordered a mental evaluation of Williams and reviewed his school, medical, and prison records. The potentially mitigating evidence of which counsel was aware consisted of the following: Williams had been in training school early, near the age of eleven or twelve; he had previously spent time in the Department of Correction; his mother did not provide a good home life for him; he had confrontations with his stepfather; his mother had a lot of men in and out of the house and possibly used drugs in his presence; his family faced economic hardship; and he was allegedly raped in prison at the age of sixteen.

Defense counsel did not present any of the potentially mitigating evidence of Williams's troubled background to the jury. Counsel testified at the Rule 37 hearing that they did not want to put Williams on the stand to testify to his troubled youth because they feared opening him up to questions by the prosecuting attorney about details of the gaps in time during the kidnapping of Ms. Errickson, as well as other crimes Williams had committed around the same time, including the abduction and rape of another young woman which Williams had already pleaded guilty to. Counsel also feared that, by putting Williams on the stand, they would open him up to questions about the major disciplinary problems in his prison record. Counsel considered using Williams's mother to put on evidence about his troubled past, but she would not cooperate with them; and Williams could not recommend anyone else who could

have presented the evidence on his behalf. Thus, defense counsel chose to present only one witness during sentencing: Michael Orndorff, an inmate at the Arkansas Department of Correction. Orndorff originally received the death penalty, but his sentence was commuted to life without parole. Defense counsel intended for Orndorff to communicate to the jury that life in prison without parole, as opposed to being on death row, is an extremely harsh punishment.

Overall, the defense submitted six mitigating factors to the jury for consideration: (1) the capital murder was committed while Williams was under extreme mental or emotional disturbance; (2) the capital murder was committed while Williams was acting under unusual pressures or influences or under the domination of another person; (3) the capital murder was committed while the capacity of Williams to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect, intoxication, or drug abuse; (4) the youth of Williams at the time of the commission of the capital murder; (5) that Williams accepted responsibility for his conduct and admitted his participation in the crime; and (6) that Williams showed remorse for his actions.

The State presented evidence bearing on three aggravating circumstances: (1) that Williams had previously committed another felony, an element of which was the use or threat of force or violence to another person or creating a substantial risk of death or serious physical injury to another person; (2) that the capital murder was committed for pecuniary gain; and (3) that the capital murder was committed in an especially cruel and depraved manner. At the conclusion of the sentencing phase, the jury found that all three aggravating circumstances existed beyond a reasonable doubt, but found the probable existence of only one mitigating circumstance: that Williams had accepted responsibility for his conduct. The jury concluded that the aggravating circumstances outweighed the mitigating circumstances beyond a reasonable doubt and that the death penalty was justified beyond a reasonable doubt.

Rule 37 is a narrow remedy designed to prevent wrongful incarceration under a sentence so flawed as to be void. *Nooner v. State*, 339 Ark. 253, 4 S.W.3d 497 (1999). Judicial review of counsel's performance must be highly deferential. *Thomas v. State*, 330 Ark. 442, 954 S.W.2d 255 (1997). We will not reverse the trial court's decision granting or denying postconviction relief unless it is

clearly erroneous. *Nooner v. State, supra.* A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.* In making a determination on a claim of ineffectiveness, the totality of the evidence before the factfinder must be considered. *Coulter v. State*, 343 Ark. 22, 31 S.W.3d 826 (2000).

 Williams argues that his counsel was ineffective in the sentencing phase of his trial for failing to introduce mitigation evidence concerning his troubled youth. We have often quoted the standard for ineffective assistance of counsel from *Strickland v. Washington*, 466 U.S. 668, 687 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*See Sanford v. State*, 342 Ark. 22, 25 S.W.3d 414 (2000). Thus, a defendant must first show that counsel's performance "fell below an objective standard of reasonableness." *Id.* (citing *Strickland v. Washington, supra*). Second, the defendant must show that counsel's errors "actually had an adverse effect on the defense." *Id.* (citing *Strickland v. Washington, supra*). In reviewing the denial of relief under Rule 37, this court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Thomas v. State, supra; Wainwright v. State*, 307 Ark. 569, 823 S.W.2d 499 (1992). A postconviction petitioner claiming ineffective assistance has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Wainwright v. State, supra.* The petitioner must show there is a reasonable probability that, but for counsel's errors, the factfinder would have had a reasonable doubt respecting guilt in that the decision reached would have been

different absent the errors. *Thomas v. State, supra.* A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.*

Williams argues that the case of *Sanford v. State,* 342 Ark. 22, 25 S.W.3d 414 (2000) is directly on point and supports his position that his counsel was ineffective. Contrary to Williams's argument, *Sanford v. State* is factually different from the case now before us. We determined that Sanford's attorney was ineffective because the attorney made no effort to obtain Sanford's school records, jail records, medical records, or family history. *Id.* If obtained, those records would have shown that Sanford was considered mildly mentally retarded, had been in special education, and had a good school record with only one disciplinary incident. *Id.* We held that the attorney's "failure to investigate caused the jury not to have before it all the available significant mitigating evidence" and further held that such failure raised "a reasonable probability that the result of the sentencing proceeding would have been different if competent counsel had presented and explained`the significance of all the available evidence." *Id.* at 34, 25 S.W.3d at 422 (citing *Williams v. Taylor,* 529 U.S. 362 (2000)).

*Sanford* referred to another decision in which the appellant's attorney failed to discover or put on any mitigation evidence: *Pickens v. Lockhart,* 714 F.2d 1455 (8th Cir. 1983). Available evidence in *Pickens* indicated that the appellant was physically abused by his father as a youth, tried to run away several times, and had prior difficulties with the law as both a juvenile and an adult. *Id.* The Eighth Circuit Court of Appeals held that, given the severity of the potential sentence and the reality that the appellant's life was at stake, it was incumbent upon counsel to offer mitigating proof. *Id.* However, the court based its decision upon the fact that there was no indication in the record that counsel made a tactical decision not to offer the evidence. The court noted it was more likely that counsel "abdicated all responsibility for defending his client in the sentencing phase." *Id.* at 1467. It was undisputed that counsel made no investigation whatsoever into any potential mitigating circumstances, prompting the court to add: "It is only after a full investigation of all the mitigating circumstances that counsel can make an informed, tactical decision about which information would be the most helpful to the client's case." *Id.* However, the court made it clear in *Pickens* that it would not have faulted a strategy decision by counsel to concentrate on another possible line of defense "if it were a reasoned choice based on sound assumptions." *Id.*

In this case, contrary to *Sanford* and *Pickens*, counsel clearly made a full investigation of all information available to them at the time and made a tactical decision not to offer that information to the jury. Phillip Hendry, the member of counsel assigned to handle the sentencing phase of the trial, and his co-counsel investigated Williams's school records, jail records, medical records, and family history for substantial mitigating circumstances. The results of that investigation are set out above. Counsel also had Williams evaluated by a psychiatrist, but the psychiatrist's report indicated that he was competent and also contained information they felt could have been damaging to his case. Counsel did not present any of the evidence of Williams's troubled youth to the jury because they did not want to put Williams on the stand to testify, his mother would not testify on his behalf, and he could not recommend anyone else to present the evidence. Though counsel testified at the Rule 37 hearing that, looking back, they felt they should have done things differently, they admitted that, at the time of trial, they did not know any other way to introduce the information about Williams's troubled youth.

■ Hendry stated at the Rule 37 hearing: "[I]n hindsight seeing . . . that . . . our strategy was not accepted . . . I would probably now put a lot of things in maybe that I didn't do the first time." However, he also acknowledged: "[T]he reason we did not do that is because we wanted to avoid Marcel taking the stand . . . there was too much negative that could come out of him by taking the stand," and "we saw some of the things we could have brought out in sentencing, his background, . . . as being flipped and being turned into a non-specified aggravator . . . something that could be argued in close that would harm him." The other members of Williams's trial counsel also admitted that, in hindsight and after learning more about how the mitigation phase of trial works, they felt they should have petitioned the court for funds to hire a psychiatrist or psychologist to tell the jury about Williams's background. Herb Wright testified.: "[I]t wasn't that we didn't have mitigation, [it was] that we were ignorant of how to present it without exposing him." However, counsel admitted that they believed they did the best they could at the time with the knowledge they had. A fair assessment of counsel's performance under *Strickland v. Washington, supra*, requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from counsel's perspective at the time. *Thomas v. State, supra*. Thus, hindsight has no place in a review of effective assistance of counsel.

 Matters of trial strategy and tactics, even if arguably improvident, are not grounds for a finding of ineffective assistance of counsel. *Dunham v. State*, 315 Ark. 580, 868 S.W.2d 496 (1994). As the decision not to introduce evidence of Williams's troubled background was made after a full investigation and pursued in Williams's best interest, we hold that it was a reasonable trial strategy decision and that counsel's performance did not fall below an objective standard of reasonableness.

 At any rate, Williams has not shown that counsel's failure to introduce the evidence of his troubled past prejudiced the outcome of the sentencing phase of his trial. The *Sanford* decision relied heavily upon *Williams v. Taylor*, 529 U.S. 362 (2000), in concluding there was a reasonable probability that the outcome of the sentencing phase in that case would have been different if competent counsel had presented and explained the significance of all available mitigating evidence. In *Williams*, however, the appellant offered factual substantiation of such a substantial amount of omitted mitigating evidence that the Court was convinced that there was a reasonable probability that the evidence could have changed the result of the sentencing phase. The evidence was much more substantial than in the present case.

Existing documents in *Williams* "dramatically described mistreatment, abuse, and neglect during [the appellant's] early childhood, as well as testimony that he was 'borderline mentally retarded,' had suffered repeated head injuries, and might have mental impairments organic in origin." *Id.* at 370. Other omitted evidence showed that the appellant did not advance beyond sixth grade in school, his parents had been imprisoned for the criminal neglect of the appellant and his siblings, he had been severely and repeatedly beaten by his father, he was in the custody of the social services bureau for two years during which he had a stint in an abusive foster home, and he was returned to the custody of his parents after they were released from prison. *Id.* In addition, the appellant had received commendations in prison for helping to crack a prison drug ring and for returning a guard's missing wallet, and prison guards were willing to testify that he was among the inmates least likely to act in a violent or dangerous way. *Id.*

 In the instant case, Williams contends, with no factual substantiation, that he had a poor home life and was allegedly raped in prison at age 16. Williams's most specific assertion is that "a different result could have occurred" if his trial counsel had presented mitigation evidence concerning his troubled youth. That

allegation, however, is merely conclusory and does not establish that Williams was denied a fair trial. When a defendant challenges a death sentence, the question is whether there is a reasonable probability that, absent the errors, the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. *Hill v. Lockhart*, 28 F.3d 832 (1994) (citing *Strickland v. Washington, supra*). It is likely that the jury would have viewed Williams's prior difficulties with the law as both a juvenile and an adult unfavorably, and they may not have been sympathetic to his troubled family background. He failed to call anyone to the stand at his Rule 37 hearing or to proffer the substance of any specific testimony to show what evidence could have been presented and whether it would have changed the mind of one of the jurors. *See Noel v. State*, 342 Ark. 35, 26 S.W.3d 123 (2000). We will not grant postconviction relief for ineffective assistance of counsel where the petitioner failed to show what the omitted testimony was and how it could have changed the outcome. *Id.* Williams has failed to demonstrate there is a reasonable probability that, but for counsel's failure to introduce the evidence of his troubled youth, the jury would have reached a sentence of life imprisonment without parole. As Williams has failed to demonstrate both error and prejudice, we affirm.

Affirmed.

BROWN, J., concurs.

IMBER, J., not participating.

ROBERT L. BROWN, Justice, concurring. I disagree with the majority's conclusion that the three defense counsel in this case made a strategic decision not to present mitigating evidence of Williams's family and penal history. Each attorney testified that he was unaware that this evidence could be offered through a witness other than the appellant and *for that reason*, failed to present the proof to the jury. It may have been a strategic decision not to call Williams to discuss his past, but it was clearly ineffective representation not to have presented this evidence through another witness such as a psychiatrist, psychologist, or social worker.

Defense counsel William Owen James made this point abundantly clear at the Rule 37.5 hearing:

With regard to what I've learned since this case, I'd like to preface this, I was a pup in this game. I didn't know anything about it. I'd watched some capital murder cases, hear bits and pieces, but I had never tried one. And so I hate to criticize, but, I mean, we completely and absolutely dropped the ball. We didn't do anything we should have done for sentencing phase. I think there was huge amount of mitigation that could have been brought forward. I believe that this man's life from the time he was born, I mean he went to prison when he was 14 or 15. He went to training school. He got out and robbed someplace with a broken shotgun because he thought he could [go] back to the training school, was charged as an adult and went to prison and then got out seven months before this happened, I believe. And I think the, I mean, the evidence would have showed that his family life was pretty messed up, that he didn't have lot of guidance.

. . . .

I absolutely disagree that it was trial strategy on the part of the defense team, after careful consideration that the witnesses put on in the sentencing phase was the best way to proceed in this particular case. Before this I had tried no capital cases. From November to the time of the trial I was there every time and I don't know — it frankly didn't come up that much. The idea of mitigation was apparently by all of us. Like I said, I certainly don't mean to discredit the folks who were helping me learn, but, this is the bottom line, we had no idea what mitigating — we thought mitigation was Boy Scout merits he should have got. We had no idea what we should have been looking for.

James concluded that without question this social and penal history should have been conveyed to the jury through a psychiatrist or psychologist.

Lead defense counsel Herb Wright, Jr., testified similarly:

The concept of using a psychiatrist or psychologist or some type of mitigation specialist to come and present a life history of the client was foreign. That is something I learned in other experiences. I think to do that makes an incredible difference.

. . . .

In looking back, the problem as I see wasn't that we didn't have mitigation, is that we were ignorant of how to present it without

exposing him. I was concerned about putting him on in the penalty phase. Now I know that I can achieve the goal through a psychologist or a psychiatrist or a mitigation specialist.

Wright acknowledged that it was error on his part not to have presented a psychiatrist or psychologist to explain to the jury Williams's background and history. He was simply ignorant as to how to go about it. He acknowledged that the defense team did not want to call Williams to testify, but the team did not know that they could have hired and called a professional to present this mitigating evidence. The third defense counsel, Phillip Hendry, testified that looking back on it, he would have put on Williams's background in mitigation.

The importance of mitigation evidence in the sentencing phase of a death case has been emphasized by this court. We no longer engage in a proportionality review of comparable crimes and sentences as part of our death-case analysis, because we have concluded that the weighing of aggravating and mitigating circumstances by the jury affords sufficient protection against arbitrary verdicts. *See Williams v. State*, 321 Ark. 344, 902 S.W.2d 767 (1995). That, of course, highlights the importance of mitigating evidence.

Nevertheless, I agree with the majority that Williams has not shown that with the omitted social history and background, there is a reasonable probability that the results of his trial would have been different. What he offers in the way of early incarcerations, a dysfunctional family, and rape while in prison does not compare to the omitted history in either *Williams v. Taylor*, 529 U.S. 362 (2000), or *Sanford v. State*, 342 Ark. 22, 25 S.W.3d 414 (2000).

For that reason, I agree to affirm.