STATE of Arkansas *v.* Kevin FRANKLIN

02-409 89 S.W.3d 865

Supreme Court of Arkansas
Opinion delivered November 21, 2002

*Mark Pryor*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellant.

*Etoch & Halbert Law Firm*, by: *Louis A. Etoch*, for appellee.

R AY THORNTON, Justice. The State appeals from the circuit court's decision to grant the motion of appellee Kevin Franklin for a new trial due to ineffective assistance of his counsel, Kenneth Haynes. The State argues that the defense did not present evidence of prejudice relating to Mr. Haynes's alleged errors in representing Mr. Franklin and that the circuit court erroneously relied on cumulative error in making its determination. Mr. Franklin responds that evidence of prejudice was presented, and the circuit court properly granted the new trial based on six separate instances of attorney error and prejudice to Mr. Franklin resulting from each error. We hold that the circuit court's decision was clearly erroneous, and we reverse.

Mr. Franklin was convicted of first-degree murder and sentenced to a term of 480 months in the Arkansas Department of Correction. His conviction was affirmed by the court of appeals. *Franklin v. State*, CACR 99-962 (Ark. App. May 17, 2000). On July 17, 2000, Mr. Franklin filed a motion for new trial seeking post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37. On November 17, 2001, the circuit court held a hearing and on January 18, 2002, the court entered an order granting appellee's motion. The circuit court found that Mr. Franklin was entitled to post-conviction relief based on the following six grounds: failure to permit Mr. Franklin to testify, trial counsel was ineffective due to lack of preparation, failure to request AMCI 202 instruction, failure to challenge the gunshot-residue test or results, counsel's ineffectiveness during the sentencing phase, and cumulative effect of errors. The State filed a notice of appeal from the

trial court's order granting post-conviction relief on January 28, 2002.

■ This case is properly before us because post-conviction proceedings under Arkansas Criminal Procedure Rule 37 are civil in nature, and therefore the State is entitled to appeal from an order granting postconviction relief. *State v. Dillard*, 338 Ark. 571, 998 S.W.2d 750 (1999).

■ We will not reverse the trial court's decision granting or denying postconviction relief unless it is clearly erroneous. *Id.* A trial court's finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Dansby v. State*, 350 Ark. 60, 84 S.W.3d 857 (2002). In making a determination on a claim of ineffectiveness of counsel, the totality of the evidence before the fact finder must be considered. *State v. Hardin*, 347 Ark. 62, 60 S.W. 3d 397 (2001). We defer to the findings of the circuit court because the resolution of credibility issues is within the province of the trial court. *Johnson v. State*, 321 Ark. 117, 900 S.W. 2d 940 (1995).

■ The issue the State presents for this appeal is whether the circuit court erred by finding that Mr. Franklin was entitled to post-conviction relief due to ineffectiveness of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court enunciated the standard for measuring the effectiveness of counsel:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sen-

tence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.*

We review each of the six findings by the circuit court to determine whether the conviction should be set aside based upon an analysis of the two prongs established by *Strickland, supra.*

## I. Mr. Franklin's failure to testify at trial

The State argues that Mr. Franklin's failure to testify at trial does not constitute valid grounds for declaring counsel ineffective. Mr. Franklin contends that he did not knowingly, voluntarily or intelligently waive his right to testify, as required by Rule 1.2. of the Model Rules of Professional Conduct and that the circuit court was correct in finding grounds for ordering a new trial based on Mr. Franklin's failure to testify.

Rule 1.2 states that "[i]n a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify." *Id.* Case law has confirmed this tenet of the scope of representation. In *Dansby, supra,* this court held:

> The first prong of the *Strickland* test is whether counsel's performance was deficient because Mr. Dansby testified in his own behalf. We have consistently held that whether or not a defendant testifies is not a basis for postconviction relief. "The accused has the right to choose whether to testify in his own behalf. Counsel may only advise the accused in making the decision. The decision to testify is purely one of strategy." *Chenowith v. State,* 341 Ark. 722, 734, 19 S.W.3d 612, 618 (2000).

*Dansby, supra.* Furthermore, the defendant must state specifically what his testimony would have been and demonstrate that his failure to testify resulted in prejudice to his defense. *Isom v. State,* 284 Ark. 426, 682 S.W.2d 755 (1985).

In *Chenowith, supra,* there was conflicting testimony as to whether the defendant made the decision not to testify on the advice of his attorney, or whether the attorney agreed that the

defendant would testify, then refused to introduce his testimony during the trial. *Id.* The circuit court resolved the conflict and found that Chenowith's attorney advised him not to testify, that defendant took that advice. *Id.* This court deferred to the trial court's superior position to resolve credibility issues. *Id.*

In the instant case, Mr. Haynes never testified that he refused to allow Mr. Franklin to testify in his own behalf. Mr. Franklin and his mother confirmed at the posttrial hearing that he expressed to Mr. Haynes that he wanted to testify at his trial. Mr. Haynes testified at the posttrial hearing that he did not "recall telling him [Mr. Franklin] that he had an absolute right to testify" and that he did recall that it "was simply my advice that he not testify."

While the circuit court was not clearly erroneous in finding that Mr. Haynes erred and did not properly inform his client of his right to testify and did not elicit a proper waiver of his right to testify, the petitioner made an insufficient showing of prejudice. Petitioner did not make any showing as to what evidence would have been presented if Mr. Franklin had been allowed to testify, other than his statement that he had a clean record and that he had no involvement with the shooting. The evidence included Rico Anderson's testimony that Mr. Franklin and Joe Stevenson argued and that after the argument, Mr. Franklin ordered Anderson to shoot Stevenson. Anderson further testified that Mr. Franklin would kill him if he did not shoot Stevenson. Frank Hampton, a passerby driving his car along the street where the shooting occurred on the same night, testified that two men tried to get inside his car and that one of them, identified by him as Mr. Franklin, pulled out a pistol and handed the gun to the other man who fired shots at the car as Mr. Hampton sped away. A gunshot-residue test showed that Mr. Franklin had gunpowder on both of his hands. The only testimony by the defense witness was by Pedro Bryant, who testified that he did not see Mr. Franklin give Anderson a gun, but that Mr. Franklin had a gun just before the shooting, and Bryant also admitted that he had previously told the police that Mr. Franklin did give Anderson the gun. Mr. Haynes testified at the post trial hearing that Mr. Franklin did not understand accomplice liability, and when Mr. Haynes

asked questions of Mr. Franklin that he believed the prosecutor would ask, Mr. Franklin incriminated himself and demonstrated that he was indeed an accomplice and indicated his belief that if he did not fire the fatal shot, he could not be convicted of a crime.

█ Notwithstanding the trial court's finding that Mr. Haynes erred in failing to properly inform his client of his right to testify and in failing to elicit a proper waiver of his right to testify, the petitioner did not demonstrate that prejudice resulted from Mr. Haynes's error. There was little showing of what his testimony would have been had he been allowed to testify. We cannot conclude that his error was prejudicial in light of the overwhelming evidence that Mr. Franklin furnished the gun to the shooter, Anderson, and that Mr. Franklin told Anderson to fire the gun. We find that this error did not cause a breakdown in the adversarial process that renders the resulting conviction unreliable.

## II. Lack of preparation

The trial court's order states that Mr. Haynes was ineffective on the basis that he did not prepare for trial. The order stated:

> Trial counsel Mr. Haynes admitted he filed no motions of any kind on defendant's behalf. Mr. Haynes filed no motion for discovery. Kenneth Haynes filed no evidentiary motions of any kind.

█ However, the petitioner did not make a showing of both error and prejudice in accordance with *Strickland, supra*. Mr. Haynes obtained the complete files of the prosecutor and the sheriff, and though he did not file any discovery motions, it was not shown at the hearing that Mr. Haynes failed to obtain any crucial piece of evidence.

The trial court's order goes on to state that "Haynes admitted he did not go out and interview potential witnesses." This finding is clearly erroneous. Mr. Haynes stated at the post-trial hearing that he interviewed many witnesses, though he did not call them to testify. Mr. Haynes's statements cannot be interpreted as an admission that he did not interview potential witnesses.

### *III. Failure to request a limiting instruction*

The circuit court found that Mr. Haynes failed to request a limiting instruction on Pedro Bryant's testimony that he stated to a police officer that Mr. Franklin had given a gun to the shooter. The circuit court found that Mr. Haynes failed to request that the court give the AMCI 2d 202 limiting instruction to the jury, which states:

> Evidence that a witness previously made a statement which is inconsistent with his testimony at the trial may be considered by you for the purpose of judging the credibility of the witness but may not be considered by you as evidence of the truth of the matter set forth in the statement.

*Id.* The circuit court cited *Reynolds v. State*, 341 Ark. 387, 18 S.W. 3d 331 (2000), which held that an attorney's counsel could be considered ineffective if he failed to object to an erroneous jury instruction.

■ ■ In the instant case, the attorney failed to request a limiting instruction, which is an entirely different fact situation. In *Sasser v. State*, 338 Ark. 375, 993 S.W. 2d 901 (1999), we held that when the circuit court based its determination of ineffective assistance of counsel on the attorney's failure to request a limiting instruction, the reviewing court should apply the second prong of the *Strickland* analysis to determine if prejudice resulted from the failure to request the instruction to the extent that the outcome of the trial would have been different had the instruction been given. *Sasser, supra.* On this point, there was no finding of prejudice by the trial court, nor was there sufficient evidence presented that the conviction resulted from a breakdown in the adversarial process that renders the result untenable.

### *IV. Failure to challenge gunshot residue test*

■ In the order, the circuit court found that besides the police officer's testimony that the gunshot-residue swabs were taken shortly after the shooting, no other evidence was adduced at trial concerning the gunshot-residue test. The court made no finding that Mr. Franklin was prejudiced by Mr. Haynes's failure

to object to the evidence or even that the objection would have been sustained. Mr. Haynes testified that he could not conceive of an argument that would have supported his objection to the gunshot-residue test. Furthermore, Mr. Haynes testified that the test had nothing to do with the defendant's guilt or innocence because the test did not establish when Mr. Franklin had handled a gun. Also, Mr. Haynes explained that it was undisputed that Mr. Franklin did not shoot the victim. The gunshot-residue test results were not damaging because there was other evidence presented at trial that Mr. Franklin had shot a gun thirty minutes prior to the time the victim was shot. Thus the gunshot residue might have resulted from his firing that unrelated shot. Mr. Haynes's trial strategy, in light of overwhelming evidence that Mr. Franklin had handled a gun, was to admit that Mr. Franklin had handled and fired a gun that night, but not the gun that was used in the murder, and it would have been pointless to object to the gunshot-residue test. We hold that there was no showing of prejudice resulting from Mr. Haynes's failure to object to the gunshot-residue test.

## V. Failure to present evidence during the sentencing phase of trial

The circuit court found that Mr. Haynes was ineffective because he failed to present mitigating evidence during the sentencing phase of Mr. Franklin's trial. The circuit court specifically states that had Mr. Haynes presented evidence it would have been as follows:

> Franklin was raised by his mother, pretty much without a father. Franklin had four brothers and one sister. Franklin was the next to the youngest. Franklin, a young man, was only twenty-one years of age at the time of his trial. Franklin graduated from Central in the class of 1996. Franklin was working at or around the time of the occurrence. Franklin was the father of six minor children. Also, Franklin had received counseling in the eighth grade from Walter Darnell, a counselor a the local mental health facility.

An attorney can be ineffective for either failing to present mitigating evidence or failing to thoroughly investigate potentially mitigating evidence before making a strategic decision

not to present it. *Williams v. State*, 347 Ark. 371, 64 S.W. 3d 709 (2002); *Williams v. Taylor*, 529 U.S. 1495 (2000); *Coulter v. State*, 343 Ark. 22, 31 S.W. 3d 826 (2000); *Sanford v. State*, 342 Ark. 22, 25 S.W. 3d 414 (2000). In each of these cases, the sentence was death and the attorney was prohibited from forgoing his duty to investigate and submit mitigating evidence due to "the severity of the potential punishment." *Sanford, supra*.

 In the instant case, Mr. Franklin did not receive the death penalty, and the offense with which he was charged was not subject to the possibility of the death penalty, therefore these cases are inapposite. The maximum Mr. Franklin could receive was life in prison Ark. Code Ann. § 5-4-401(a)(1) (Repl. 1997), and he was sentenced to forty years' imprisonment. A defendant who has received a sentence less than the maximum sentence for the offense cannot show prejudice from the sentence itself. *Buckley v. State*, 349 Ark. 53, 76 S.W.3d 825 (2002).

 While showing that Mr. Franklin had a disrupted and difficult childhood, that he had children to support and that he had received needed counseling at one time are all mitigating factors, they are not unusual instances that would satisfy the *Strickland* criteria that the failure to introduce them constituted an error so serious as to deprive the defendant of a fair trial. There was no showing of mental or emotional impairment or any specific instance of severe trauma that would have caused violent behavior. While these factors are mitigating, the circuit court's order does not state that their absence in the sentencing phase was prejudicial, and we conclude that the absence of this evidence was not so serious as to render the result unreliable.

### VI. Cumulative error

 We have held that reliance upon cumulative error by the trial court to determine ineffectiveness of counsel under the *Strickland* test is reversible error. *E.g., Hardin, supra; Noel v. State*, 342 Ark. 35, 26 S.W. 3d 123 (2000). In *Hardin, supra*, this court held that the circuit court erroneously interpreted an earlier case, *Neal v. State*, 270 Ark. 442, 605 S.W. 2d 421 (1980), to mean that cumulative error could be considered in a *Strickland* analysis to

determine ineffective assistance of counsel. *Hardin, supra.* The *Hardin* court cited *Neal,* which held that the specific allegations considered separately would not justify a new trial, but that considered collectively, the allegations warranted this court granting permission to apply for Rule 37 relief. *Id.* The *Hardin* court pointed out that when *Neal* was decided, an earlier version of Rule 37 was in effect. That version of the rule directed that petitioners seeking to appeal their convictions must first get permission from this court to apply for Rule 37 relief in circuit court.[1] *Neal* only elucidated the rule that this court could consider the allegations collectively to determine whether the petitioner was entitled to proceed with a Rule 37 hearing, not that the effectiveness of counsel could be judged by cumulative error. The *Hardin* court clarified that point by stating:

> [W]hat we do not know is whether the circuit court would have found that one or more of the allegations of ineffective assistance of counsel, standing alone, showed that Mr. Weber made errors so serious that he was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment, and that the deficient performance prejudiced the defense sufficiently to undermine confidence in the outcome of the trial.

*Id.*

The instant case is distinguishable from *Hardin* in that the trial court found specific instances of error and did not base its order exclusively on cumulative error. By contrast, in *Hardin,* we held that the post-conviction relief granted by the circuit court was based solely on a cumulation of allegations of ineffective assistance of counsel. The State contends that *Hardin* applies to the instant case because the circuit court based its grant of a new trial solely on the cumulative effect of the errors committed by Mr. Franklin's counsel when it wrote in the order:

> considering the totality of the circumstances and the cumulative nature of trial counsel's flaw and inadequacies, the Court concludes that the aggregate of errors violated Mr. Franklin's due

---

[1] See Ark. R. Crim. P. 37.2(a) 1990 (modified 1991) "If the conviction in the original case was appealed to the Supreme Court or Court of Appeals, then no proceedings under this rule shall be entertained by the circuit court while the appeal is pending."

process of law by depriving him of substantial justice and a fundamentally fair trial.

However, it is clear from the circuit court's order that on the first point alone it found grounds for a new trial:

> Under the specific facts of this case, the Court cannot find from the evidence that Franklin, knowingly, voluntarily, or intelligently, after advice from counsel, waived his absolute right to testify as a criminal defendant. The court finds that Franklin is entitled to a new trial on this issue.

Unlike *Hardin*, the circuit court in the instant case found that a new trial was appropriate solely on the grounds of Mr. Franklin's failure to testify and did not rely on cumulative error alone to make its determination.

Furthermore, as discussed earlier in this opinion, there was no showing of prejudice resulting from Mr. Franklin's failure to testify. Similarly, there was no showing of prejudice resulting from the other errors, and therefore the prejudice prong of the *Strickland* test was not satisfied.

 Accordingly, we find that there was no showing of prejudice sufficient to deprive Mr. Franklin of a fair trial due to counsel's ineffectiveness with respect to any one of the six grounds stated by the circuit court.

Reversed.

ARNOLD, C.J., not participating.

CORBIN, J., concurring.

IMBER and GLAZE, JJ., concurring in part and dissenting in part.

DONALD L. CORBIN, Justice, concurring. I concur in the majority's holding that the trial court erred in granting Appellee Kevin Franklin a new trial pursuant to Ark. R. Crim. P. 37. I write separately to emphasize that trial counsel has a duty to investigate for possible mitigating evidence to present during the sentencing phase of a trial, regardless of whether the defendant may receive the death penalty.

The constitutional guarantee of effective assistance of counsel extends to the sentencing phase of the trial. *See Coulter v. State,* 343 Ark. 22, 31 S.W.3d 826 (2000); *Sanford v. State,* 342 Ark. 22, 25 S.W.3d 414 (2000); *Helton v. State,* 325 Ark. 140, 924 S.W.2d 239 (1996). I agree with the majority that, ordinarily, the issue of ineffectiveness in failing to investigate for mitigating evidence has arisen in cases where the defendant was sentenced to death. *See, e.g., Williams v. State,* 347 Ark. 371, 64 S.W.3d 709 (2002); *Camargo v. State,* 346 Ark. 118, 55 S.W.3d 255 (2001); *Coulter,* 343 Ark. 22, 31 S.W.3d 826; *Sanford,* 342 Ark. 22, 25 S.W.3d 414. However, this court has addressed this issue in non-death cases as well. *See Pyle v. State,* 340 Ark. 53, 8 S.W.3d 491 (2000); *Helton,* 325 Ark. 140, 924 S.W.2d 239. Thus, contrary to the State's assertion, an allegation of ineffectiveness in failing to investigate and present evidence during sentencing is cognizable in cases, like this one, where the defendant received a term of imprisonment.

In the present case, Appellee, through his testimony and that of his mother, Diane Willis, presented evidence during the Rule 37 hearing that he asserts mitigated his crime. While I agree with the majority that the proffered evidence does not demonstrate a reasonable probability that Appellee's sentence would have been lessened had the jury heard this testimony, I take issue with trial counsel's claim that his failure to present any evidence during sentencing was a matter of trial strategy.

In the first place, it would seem to be elementary that one must first investigate for possible mitigating evidence before it can be determined that the best strategy is to present no evidence. Here, it is undisputed that trial counsel did not conduct an investigation to discover whether there was any mitigating evidence to present. Counsel initially testified that he had investigated Appellee's background. However, when asked about specific facts, counsel stated that he had no recollection whether he had discovered such facts. He then indicated that he was not prepared to address this issue because he had only learned on the morning of the Rule 37 hearing "for sure" that he would be participating in the hearing. He admitted, however, that he did not call a single witness or present a single piece of evidence during the sentencing

phase of the trial. He also admitted that he did not conduct any formal investigation into Appellee's background.

In the second place, counsel's reasons for not calling Appellee or his mother are not reasonable trial strategy. When asked why he did not call them, both of whom were admittedly available to testify, trial counsel explained that he was concerned that they would not make good witnesses. He indicated that the jury might be put off by the fact that Appellee had some gold teeth; however, counsel conceded that the jury could probably see his teeth while he sat at the defense table.

Counsel also explained that he was concerned that neither Appellee nor his mother understood the legal theory of accomplice liability, and that, if they took the stand, they would likely incriminate Appellee regarding his presence at the shooting. While this may have been a legitimate concern during the guilt phase of the trial, I cannot see that it was a part of any reasonable strategy during the sentencing phase. The jury had already found him guilty of being an accomplice to murder.

Finally, counsel admitted that Appellee had no prior convictions to be impeached with, but he claimed that Appellee had another criminal charge pending that might be used against him. Despite his concern, counsel made no effort to prevent the State from cross-examining Appellee with this information.

In sum, I am troubled by what I perceive as trial counsel's indifferent attitude about these allegations of ineffectiveness. Regardless of whether the death penalty is a permissible sentence, defense counsel has a duty to conduct an investigation for possible mitigating evidence. Moreover, although counsel must use his or her professional judgment when determining whether to present any such evidence, the duty to investigate remains constant and is not a matter of trial strategy. Because trial counsel did not conduct an investigation for mitigating evidence, I would recommend that he be referred to the Committee on Professional Conduct. I nonetheless concur in the judgment because counsel's failure to investigate did not prejudice Appellee's sentence.

$\mathbf{A}$NNABELLE CLINTON IMBER, Justice, concurring. I concur in the result of the majority opinion and agree that this case should be reversed because there was no showing of prejudice by the petitioner, as required by the second prong of the test in *Strickland v. Washington*, 466 U.S. 668 (1984). However, I must dissent from that portion of the majority opinion that finds this case distinguishable from *State v. Hardin*, 347 Ark. 62, 60 S.W.3d 397 (2001).

In *Hardin*, the majority reversed a trial court's decision granting a Rule 37 3petition for new trial due to ineffective assistance of counsel. *Id.* The trial court had misinterpreted a case decided under prior law and had erroneously based its decision on cumulative error. *Id.* The *Hardin* majority remanded the case to the trial court with instructions to re-analyze its decision with an eye to the individual errors and without regard to cumulative error. *Id.*

In my dissent in *Hardin*, I pointed out that it was unnecessary to remand the case because the petitioner had made no showing of prejudice and, therefore, had not met the second prong of *Strickland*. *State v. Hardin, supra* (Imber, J., dissenting). This was borne out by the fact that the trial court's decision in *Hardin* "set forth no facts showing prejudice and no such facts [were] apparent from the record." *State v. Hardin*, 347 Ark. at 69, 60 S.W.3d at 401 (Imber, J., dissenting).

Far from being distinguishable, the *Hardin* case and this case are four-square on point with each other. The majority states that *Hardin* is distinguishable because in the instant case the trial court found specific instances of error and did not base its order solely on cumulative error. Particularly, the majority makes note that the trial court found a new trial was appropriate on the grounds of Mr. Franklin's failure to testify and states that this shows the court did not rely on cumulative error alone to make its determination. The majority quotes *Hardin* as follows:

> [W]hat we do not know is whether the circuit court would have found that one or more of the allegations of ineffective assistance of counsel, standing alone, showed that Mr. Weber made errors so serious that he was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment, *and* that the defi-

cient performance *prejudiced the defense sufficiently to undermine confidence in the outcome of the trial.*

*State v. Hardin,* 347 Ark. at 67, 60 S.W.3d at 400 (emphasis added).

I fail to see how *Hardin* and the instant case are distinguishable. This language from *Hardin* shows that a trial court must make two findings in order to grant a new trial based on an error that rises to the level of ineffective assistance of counsel under the *Strickland* test: (1) that counsel was deficient in regard to the error so that he was not performing as "counsel" guaranteed by the Sixth Amendment, and (2) that the error prejudiced the defense sufficiently to undermine confidence in the outcome of the trial. In reading the trial court's order in the instant case, the trial court found trial counsel deficient in regard to the issue of Mr. Franklin's failure to testify. This met the first prong of the *Strickland* test. However, the State correctly pointed out that the trial court made no finding that Franklin's failure to testify either resulted in prejudice to him or undermined confidence in the outcome of the trial; therefore, as in *Hardin,* the prejudice prong of *Strickland* was not met on the face of the trial court's order with regard to the individual errors examined by the trial court.

The only possible prejudice finding in the trial court's order is in the point on cumulative error in which the trial court states:

> This Court has looked at trial counsel's errors and omissions complained of by Franklin. Considering the totality of the circumstances, and the cumulative nature of trial counsel's flaws and inadequacies, the Court concludes that the aggregate of errors violated Franklin's due process of law *by depriving him of substantial justice and a fundamentally fair trial.*

(Emphasis added.) The emphasized portion of this quote could possibly be read as a finding of prejudice that served to meet the second prong of the *Strickland* test; but, if so, it is the only such prejudice finding in the trial court's order, and it is contained only in the point on cumulative error. Because the trial court did not base its order for new trial due to Franklin's failure to testify on a two-pronged *Strickland* analysis, the only error in which the trial court arguably found *Strickland* prejudice was the point on cumu-

lative error, placing this case exactly on point with *Hardin*. If *Hardin* was rightly decided, that would then mean Mr. Franklin's case should also be remanded for the trial court to make a non-cumulative-error analysis on that final point on appeal, as was done in *Hardin*.

The fact is that this case has been correctly decided because Mr. Franklin did not show, and the trial court did not find, any prejudice that met the second prong of the *Strickland* test. The *Hardin* decision ignored the prejudice prong of *Strickland* and, I believe, was incorrectly decided. Rather than distinguishing this case from *Hardin*, I would overrule *Hardin* with the decision handed down in this case today.

GLAZE, J., joins in this opinion.