HAWAII HOUSING AUTHORITY ET AL. *v.*
MIDKIFF ET AL.

No. A–113.   Decided September 2, 1983

JUSTICE REHNQUIST, Circuit Justice.

Applicants,* the Hawaii Housing Authority, its commissioners and executive director, request that I stay or vacate an order of the United States Court of Appeals for the Ninth Circuit. The present application bears only tangentially on the merits of the underlying lawsuit, in which the Court of Appeals decided that the condemnation provisions of the Hawaii Land Reform Act, Haw. Rev. Stat. § 516–1 *et seq.* (1976 and Supp. 1982), violated the "Takings Clause" of the Fifth Amendment to the United States Constitution. *Mid-*

_____

*Applicants are supported by numerous lessee homeowner associations which intervened in the proceedings below.

*kiff* v. *Tom,* 702 F. 2d 788 (CA9 1983). Applicants have appealed to this Court from that ruling, and their jurisdictional statement will be considered by this Court in due course. This application arises out of the decision of the Court of Appeals on August 11, some four months after its opinion on the merits was issued, to recall its mandate for clarification and, pending such clarification, to enjoin applicants from pursuing or initiating any state administrative or judicial proceedings under the Hawaii Land Reform Act. For the reasons that follow, I will deny applicants' request.

Applicants base their request for a stay on three arguments. First, they argue that because a notice of appeal to this Court was filed with the Court of Appeals on July 18, 1983, the Court of Appeals lacked the power to recall and clarify its mandate on August 11, 1983. Jurisdiction over this case, they claim, had shifted to this Court. I find this reasoning unpersuasive. Whatever the current application of the so-called jurisdictional shift theory to modern appellate procedure, it is well settled that a court retains the power to grant injunctive relief to a party to preserve the status quo during the pendency of an appeal, even to this Court. See, *e. g., Newton* v. *Consolidated Gas Co.,* 258 U. S. 165, 177 (1922); *Merrimack River Savings Bank* v. *Clay Center,* 219 U. S. 527, 531–535 (1911); Fed. Rule Civ. Proc. 62. Applicants also argue that respondents circumvented the normal appellate process when they sought recall of the mandate after the District Court had denied their request for injunctive relief. Although recalling a mandate is an extraordinary remedy, I think it probably lies within the inherent power of the Court of Appeals and is reviewable only for abuse of discretion. On the record before me, I am not prepared to say that the Court of Appeals abused its power in recalling its mandate.

Second, applicants contend that the traditional equitable requirements for an injunction were not shown to exist at the time the Court of Appeals issued its order in this case.

While the August 11th order of the Court of Appeals contained no findings such as those contemplated by Federal Rule of Civil Procedure 65, the Court of Appeals obviously contemplates possible modification of its injunction in the near future. At the present time, a stay based on this contention would be inappropriate.

Applicants' third contention raises by far the most serious question: whether the injunction issued by the Court of Appeals against further state proceedings violates the principles of federalism established in *Younger* v. *Harris*, 401 U. S. 37 (1971), *Huffman* v. *Pursue*, 420 U. S. 592 (1975), and later cases. The underlying rationale of *Younger* is a recognition that national government functions best if state institutions are unfettered in performing their separate functions in their separate ways. *Younger, supra*, at 44. A central part of this policy is a frank recognition that state courts, as judicial institutions of coextant sovereigns, are equally capable of safeguarding federal constitutional rights. See *Trainor* v. *Hernandez*, 431 U. S. 434, 446 (1977). Although originally adopted to prevent a federal court from enjoining pending state criminal proceedings, the principles of *Younger* are fully applicable to noncriminal proceedings when important state interests are involved. See *Middlesex County Ethics Committee* v. *Garden State Bar Assn.*, 457 U. S. 423 (1982); *Trainor, supra; Huffman, supra.* Where vital state interests are involved, a federal court should refrain from enjoining an ongoing state judicial proceeding unless state law clearly bars the interposition of constitutional claims, or some extraordinary circumstance exists requiring equitable relief. *Middlesex County Ethics Committee, supra*, at 432.

On the record before me, this third ground on which applicants' request for a stay is based seems to present a close and rather intricate question. There is no doubt in my mind that the *Younger-Huffman* rationale applies to a federal injunction against state judicial implementation of a far-reaching land reform program in which the State is itself a party to the

proceedings in its own courts.   I am totally unpersuaded by respondents' reliance on *Wooley* v. *Maynard,* 430 U. S. 705 (1977).   In *Wooley,* the three state proceedings had already concluded, and the federal injunction had absolutely no effect on them.   The same cannot be said of the effect of the Court of Appeals' injunction on the pending action in the courts of Hawaii.

A more doubtful question, both as to the law and the facts of this case, is the time as of which the determination should be made as to the pendency of state court proceedings.   As I understand it, the injunction issued by the Court of Appeals in this case was the first such remedy that affected judicial proceedings.   As of the date it was issued—August 11, 1983—there were indisputably significant condemnation cases pending in state court under the Land Reform Act. Certainly a strong argument can be made that this case may be analogized to *Hicks* v. *Miranda,* 422 U. S. 332 (1975), in that although the federal proceedings began before those brought by the State, no federal injunction of state condemnation proceedings was granted until the latter proceedings were underway.   If, on the other hand, the critical date is the commencement of the proceeding in the United States District Court for the District of Hawaii in 1979, the question of whether state proceedings were pending might well be resolved differently.   This application may also raise the issue left undecided in *Steffel* v. *Thompson,* 415 U. S. 452 (1974), as to the circumstances under which a properly issued federal judgment declaring a state law unconstitutional may be converted into an injunction against the enforcement of that law.

Even though these questions obviously cannot be finally resolved by a single Justice of this Court, were the Court of Appeals to continue its injunction in the present form after revising its mandate, or for an indefinite period of time, I would have to do the best I could to forecast how the full Court would resolve them.   But the unique interlocutory posture of the case at present spares me that task.   It would

be an inappropriate exercise of my authority as Circuit Justice to stay an order of the Court of Appeals which is not demonstrably wrong and which that court itself may be disposed to revise in short order. The application is therefore denied without prejudice to its being renewed in the event of changed circumstances.