STATE of Arkansas *v.* Hezile EARL, Jr.

CR 97-1310                                        984 S.W.2d 442

Supreme Court of Arkansas
Opinion delivered January 28, 1999

*Winston Bryant*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, Ass't Att'y Gen., for appellant.

*Mark F. Hampton*, for appellee.

P ER CURIAM. Appellee Hezile Earl, Jr., seeks the recall of this court's mandate issued on November 10, 1998, and bases his motion on the Supreme Court's recent decision in *Knowles v. Iowa*, No. 97-7597 (U.S. Sup. Ct. Dec. 8, 1998). There, the Supreme Court held that a search incident to a traffic violation conducted pursuant to Iowa Code Ann. § 805.1(4) violated the Fourth Amendment. While § 805.1(4) is similar or equivalent to our Ark. R. Crim. P. 5.5, which was in issue in Earl's case here, Earl, unlike the defendant in *Knowles*, did not challenge Rule 5.5's constitutionality. *See State v. Earl*, 333 Ark. 489, 970 S.W.2d 789 (1998).[1] In fact, this court emphasized this point, stating the following:

> We are aware the American Bar Association has recommended that Rule 5.5 and similar rules employed in other juris-

---

[1] We disagree thoroughly with the dissent's conclusion that Earl raised the constitutionality of Rule 5.5.

> dictions not be used due to questions pertaining to its constitutional validity. However, Rule 5.5's constitutionality is not before us.

*Id.* at 496, 970 S.W.2d at 793.

■ Thus, Earl never timely challenged Rule 5.5's constitutionality at his hearing below or on appeal, and he did so only after the *Knowles* case was decided and after our court's mandate was issued. Earl cites no authority that supports the recall of a mandate in these circumstances, and we are unaware of any. Consequently, we deny Earl's motion to recall mandate.

BROWN, IMBER, and THORNTON, JJ., dissent.

ROBERT L. BROWN, Justice, dissenting. I would grant Hezile Earl, Jr.'s motion to recall the mandate in this case.

The constitutional issue involved is whether a police officer can search a person's car following a routine traffic stop when no arrest has been made. Just last month, the United States Supreme Court decided clearly and emphatically in a unanimous decision that a police officer could not conduct such a search without violating the Fourth Amendment's proscription against unreasonable searches. *See Knowles v. Iowa*, No. 97-7597 (U.S. Sup. Ct. Dec. 8, 1998). That is precisely the issue involved in the Earl case.

The mandate from our court permitting the search of a car following a traffic stop in Earl's case was issued on November 10, 1998. This was less than thirty days before the Supreme Court's decision in *Knowles v. Iowa, supra*. Earl filed his motion for our court to recall our mandate *the same day* that the Supreme Court handed down its decision in the *Knowles* case. It is clear that Earl was not dilatory but acted in timely fashion.

This court's rules provide for recalling a mandate. *See* Ark. Sup. Ct. R. 5-3(d). However, our rules do not specify what criteria must be met to warrant a recall. Nor do we have cases in Arkansas giving us guidance on this question. But even though this court has never addressed the issue of recalling a mandate because of a subsequent United States Supreme Court decision, the federal courts have recognized certain limited and exceptional

circumstances in which a mandate can be recalled. These exceptional circumstances include when a subsequent Supreme Court decision renders a previous appellate court decision demonstrably wrong. *See, e.g., U.S. v. Skandier*, 125 F.3d 178 (3d Cir. 1997); *U.S. v. Tolliver*, 116 F.3d 120 (5th Cir. 1997); *Nevius v. Sumner*, 105 F.3d 453 (9th Cir. 1996); *Greater Boston Television Corp. v. F.C.C.*, 463 F.2d 268 (D.C. Cir. 1971). The source of this power to recall a mandate is rooted in the inherent power of the court to protect its processes *(see Zipfel v. Halliburton Co.*, 861 F.2d 565 (9th Cir. 1988)), and will be exercised when good cause or unusual circumstances justify the remedy. *See Nevius v. Sumner, supra.* As the Ninth Circuit in *Nevius* said, "[W]e will recall a mandate only when we are animated by 'an overpowering sense of fairness and a firm belief that this is the exceptional case requiring recall of the mandate in order to prevent an injustice.'" (quoting *Verrilli v. City of Concord*, 557 F.2d 664 (9th Cir. 1977)). To recall a mandate, the infirmity in the appellate court's decision must be clearly tied to the subsequent Supreme Court decision. *See Nevius v. Sumner, supra.*

I am convinced that the *Earl* case is just such an exceptional circumstance where the mandate should be recalled. In *Knowles*, the Supreme Court decided the same issue contrary to the opinion of this court. And Earl moved immediately to recall the mandate issued less than 30 days previously which had been premised on an erroneous decision. *See Greater Boston Television Corp. v. F.C.C., supra* (whether to recall a mandate may be affected by timeliness of request).

While admitting that the statute at issue in *Knowles* (Iowa Code Ann. § 805.1(4)) is virtually identical to our Ark. R. Crim. P. 5.5, the State argues that Earl never contended that Rule 5.5 violated the Fourth Amendment. But Earl did in fact claim that the application of Rule 5.5 to his case was violative of the Fourth Amendment. After the State appealed the trial court's suppression of the contraband due to the unreasonable search, Earl wrote as follows in his appellee's brief:

> The Appellant's interpretation of Rule 5.5 would have unsettling ramifications on future traffic stops where a citation, rather than arrest, is typically issued.

First, if the Court were to agree with the Appellants, every citation issued with regard to a traffic violation or a violation committed in the officer's presence would give unprecedented authority to officers to conduct unlimited searches incident to "arrest." For example, a person who fails to signal a lane change would be subject to arrest under Rule 4.1(iii). The officer who typically issues a citation for this violation gives only a citation. In applying Rule 5.5 the way the Appellant has interpreted it, the officer would still be allowed to conduct an unlimited vehicle search of the vehicle compartment incident to arrest. This search could take place without probable cause or reasonable suspicion. Counsel for Mr. Earl can only speculate as to how dangerous this application of Rule 5.5 could be. *Anyone* subject to a "traffic stop" would also be subject to a search of their vehicle.

Second, a favorable ruling for the Appellants would give a "back door" to an officer conducting an otherwise unlawful search. Mr. Earl presents the facts in his case as an example. An arrest was never mentioned by Officer Ralston. He conducts what he thought to be a lawful search at the time and discovers during pre-trial that it was not. The appellant, knowing that a citation has been issued regarding the traffic violation, then relies on the language set out in Rule 5.5. Under this rationale since a citation was issued, Mr. Earl was under arrest according to Rule 5.5 and the subsequent search of his vehicle was lawful. If this were the case, law enforcement officers could disregard a majority of court precedents with regard to vehicle searches. *See Carrol v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).

Appellee Earl's original brief, pp. 2-3. All three of the Supreme Court cases cited by Earl deal with the Fourth Amendment and whether a warrantless search of a car passed constitutional muster. His argument is clearly and cogently made that the State's interpretation and application of Rule 5.5 would violate the Fourth Amendment, as construed by the Supreme Court. As in *Knowles,* Earl did not argue that Rule 5.5 was unconstitutional on its face but as applied to his case.

Exceptional circumstances exist for the recall of this mandate, and simple fairness requires it. Otherwise, a man will be tried for

possession of contraband which the United States Court has clearly held inadmissible against him. I would correct the injustice at this stage, and for that reason, I respectfully dissent.

IMBER and THORNTON, JJ., join.