Robert ROBBINS *v.* STATE of Arkansas

CR 98-1394                                      114 S.W.3d 217

Supreme Court of Arkansas
Delivered June 12, 2003
[Petition for rehearing denied September 4, 2003.*]

---

\* GLAZE and IMBER, JJ., dissent. CORBIN, J., not participating.

*Craig Lambert*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Jeffrey A. Weber*, Ass't Att'y Gen., for appellee.

Robert L. Brown, Justice. Petitioner Robert Robbins petitions this court to reopen his case in which this court affirmed his conviction for capital murder and affirmed his

death sentence. His basis for reopening his case is that an error occurred in the jury's completion of his sentencing forms and that a decision of this court, *Willett v. State*, 322 Ark. 613, 911 S.W.2d 937 (1995), requires resentencing. He further argues that this court mistakenly missed the error in the jury's completion of the sentencing forms in the direct appeal of this case, which was prepared by *amicus* counsel appointed by this court and not by retained or appointed counsel for Robbins. *See Robbins v. State*, 342 Ark. 262, 27 S.W.3d 419 (2000).

The facts are that Robbins killed his ex-girlfriend, Bethany White, in November 1997, by strangling and suffocating her. The State charged him with capital murder and sought the death penalty. The circuit court adjudged him competent to stand trial. Robbins represented himself at trial with the assistance of court-appointed standby counsel and at all times admitted guilt and sought the death penalty for himself. He even attempted to plea-bargain for the death penalty. The jury convicted him of capital murder and, following the sentencing phase of the trial, returned a death sentence.

This case has resulted in a contorted history and multiple appeals. There have been five appellate reviews by this court. Initially, Robbins sought to waive his right to appeal his conviction and sentence to this court. This court, initially, held that Robbins had successfully waived his right to an appeal, *see Robbins v. State*, 335 Ark. 380, 985 S.W.2d 293 (1998) (*per curiam*) (*Robbins I*), and his right to seek Rule 37 postconviction relief, *see Robbins v. State*, 336 Ark. 377, 985 S.W.2d 296 (1999) (*per curiam*) (*Robbins II*). Robbins's mother then filed a petition as his next friend and asked this court to recall the mandate, for a stay of execution, and for a re-examination of the case. The State opposed the petition on all fronts, including the mother's lack of standing, and argued that *Franz v. State*, 296 Ark. 181, 754 S.W.2d 839 (1988), which declined to require mandatory appeals in death penalty cases, controlled. This court recalled the mandate, stayed the execution, and ordered briefing from the State and Robbins. *See Robbins v. State*, 337 Ark. 227, 987 S.W.2d 709 (1999) (*per curiam*) (*Robbins III*).

After considering the arguments of the parties, we overruled *Franz v. State, supra*, in part and held that in cases where an appellant seeks the death penalty, it was this court's duty to conduct an

independent review of the record to determine whether prejudicial error occurred under Arkansas Supreme Court Rule 4-3(h), whether any *Wicks* violations occurred during trial, *see Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980), and whether "fundamental safeguards" were in place during the trial. *See Robbins v. State*, 339 Ark. 379, 386, 5 S.W.3d 51, 55 (1999) (*Robbins IV*). To discharge this duty, this court appointed *amicus* counsel to review the record and assist this court in our review. *See id.*[1]

*Amicus* counsel filed a brief pursuant to this court's direction. In *Robbins v. State*, 342 Ark. 262, 27 S.W.3d 419 (2000) (*Robbins V*), this court held that no Rule 4-3(h) errors, *Wicks* errors, or errors implicating "other fundamental safeguards" occurred during the trial. This court affirmed Robbins's capital murder conviction and death sentence and dissolved the stay of execution. Following *Robbins V*, Robbins began, for the first time, to contest his death sentence. He engaged legal counsel to pursue *habeas corpus* relief in federal district court. Robbins argued in the subsequent federal proceeding on his *habeas corpus* petition that an inconsistency in the jury's verdict forms violated his constitutional rights under this court's decision in *Willett v. State, supra*. The State responded that Robbins had exhausted his state remedies by not pursuing a petition for rehearing and that the mandate in the case had issued in the case, foreclosing additional review. The federal district court dismissed Robbins's *habeas corpus* petition without prejudice on the basis that Robbins had not exhausted his state remedies. Specifically, the federal district court noted that state courts had not examined Robbins's inconsistency-in-the-verdict-forms argument under *Willett v. State, supra*, and that he "may pursue his state remedies, if any."

Following dismissal of the federal *habeas corpus* matter, Robbins filed his petition to reopen his case in this court. The question of whether this court has the authority to reopen this case embraces not only this court's jurisdiction but its inherent authority. Robbins first argues that our holding in *Robbins IV* requires that the court reopen the case. He contends that the meaning of

---

[1] This court subsequently adopted Ark. R. App. P.—Crim. 10, which establishes a procedure for automatic appeals and mandatory review in death cases. *In Re: Amendment to Rule 10 of Arkansas Rules of Appellate Procedure—Criminal*, 345 Ark. Appx. 671 (2001).

*Robbins IV* is that in cases where a criminal defendant seeks the death penalty for himself, our court conducts an independent review to determine if "fundamental error" occurred during trial. He argues that just such an error, a violation of Robbins's constitutional rights under *Willett v. State, supra,* occurred in this case. It does not matter, he claims, that this error was overlooked in *Robbins V.* If the error is fundamental in magnitude, he maintains, it does not become any less fundamental by our handing down an opinion that did not address it. Robbins cites this court to *Cloird v. State,* 349 Ark. 33, 76 S.W.3d 813 (2002), in which we held that this court can reinvest the trial court with jurisdiction to address fundamental errors under the doctrine of error *coram nobis.* Thus, he contends, this court has the authority to reinvest itself with jurisdiction to address any fundamental error.

The State answers with both a procedural-bar argument and an implicit-holding argument. The State points out that the court's mandate from *Robbins V* has long since issued and that no petition for rehearing was filed. The State further urges that a petition for rehearing is the only proper procedural vehicle for questioning the validity of this court's decision. Because Robbins failed to petition the court for rehearing, the State claims, he has waived his right to assert a *Willett* error at this late date.

The State also contends in its implicit-holding argument that this court's silence in *Robbins V* on the jury-forms issue indicates that this court, indeed, considered the jury forms in this court's full review and found no *Willett* problem. The State emphasizes that our review in *Robbins V* was aided by a neutral *amicus* attorney and the record in this case was subjected to a Rule 4-3(h) review, a *Wicks* review, and a "fundamental error" analysis. This high level of scrutiny, the State urges, undoubtedly encompassed the precise error that Robbins now wants this court to address. After such a searching analysis, the State concludes that the opinion's silence as to a *Willett* issue is itself proof that this court did not believe that any such issue was present in the case. At oral argument, counsel for the State admitted that this implicit-holding argument was not made in federal district court and that the State's sole argument was that the *Willett* issue was procedurally barred due to failure to raise it in a petition for rehearing.

■ There is no question but that the death penalty is a unique punishment that demands unique attention to procedural safeguards. The United States Supreme Court has made that abundantly clear. *See, e.g., Caldwell v. Mississippi,* 472 U.S. 320, 329 (1985) ("This Court has repeatedly said that under the Eighth Amendment 'the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination.'") (quoting *California v. Ramos,* 463 U.S. 992, 998-999 (1983)); *Zant v. Stephens,* 462 U.S. 862, 884-885 (1983) ("[B]ecause there is a qualitative difference between death and any other permissible form of punishment, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.") (quotations omitted); *Woodson v. North Carolina,* 428 U.S. 280, 305 (1976) ("[T]he penalty of death is qualitatively different from a sentence of imprisonment, however long. Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two."); *Eddings v. Oklahoma,* 455 U.S. 104, 118 (O'Connor, J., concurring) ("[T]his Court has gone to extraordinary measures to ensure that the prisoner sentenced to be executed is afforded process that will guarantee, as much as is humanly possible, that the sentence was not imposed out of whim, passion, prejudice, or mistake.").

■ This court, early on, voiced its belief in the "humane principle applicable in general to criminal cases, and especially those where life is involved," and declined to exalt form over substance when dealing with the death penalty. *Bivens v. State,* 11 Ark. 455, 457 (1850). More recently, this court has repeatedly set aside strict adherence to procedural rules in connection with postconviction relief out of concern for fairness in death-penalty cases. *See, e.g., Sanders v. State,* 352 Ark. 520, 98 S.W.3d 35 (holding that a capital defendant should be afforded the protections of Rule 37.5 in this death case even though the rule was not in effect at the time of his offense); *McGhee v. State,* 344 Ark. 602, 604, 43 S.W.3d 125, 127 (2001) (holding that, because "[d]eath-penalty cases are different from other criminal cases, due to the obvious finality of the punishment," a trial court was obligated to make specific findings of fact and conclusions of law in its order; refusing to affirm summarily despite a flagrantly deficient abstract); *Echols v. State,* 344 Ark. 513, 42 S.W.3d 467 (2001) (holding that

in death penalty cases, Rule 37.5 requires a heightened level of scrutiny; remanding an insufficient order for specific findings of fact and conclusions of law on each issue raised); *Jackson v. State*, 343 Ark. 613, 619, 37 S.W.3d 595, 599 (2001) (holding that a capital defendant whose petition for Rule 37 relief was late because of a "breakdown in the State-provided postconviction proceeding" was allowed to have his ineffective-assistance claims heard); *Coulter v. State*, 340 Ark. 717, 13 S.W.3d 171 (2000) (*per curiam*) (holding that a capital defendant whose petition for Rule 37 relief was late because notice of the trial court's denial was sent to the wrong address was allowed to file a belated appeal); *Porter v. State*, 339 Ark. 15, 19, 2 S.W.3d 73, 76 (1999) (holding that, in a case where a capital defendant justifiably relied on a belief that he was represented by counsel and that such counsel was timely filing postconviction petitions on his behalf, "that fundamental fairness, *in this narrowest of instances where the death penalty is involved,*" required that the inmate be allowed to file a belated Rule 37 petition) (emphasis in original).

We further took the extraordinary step of staying all proceedings in a death case on September 12, 2002, in order to allow DNA and other testing to demonstrate a defendant's actual innocence pursuant to Act 1780 of 2001, now codified at Ark. Code Ann. § 16-112-201 through 207 (Supp. 2001). *Echols v. State*, 350 Ark. 42, 84 S.W.3d 424 (2002). We took this step even though the conviction and death sentence had been affirmed six years earlier on December 23, 1996. *Echols v. State*, 326 Ark. 917, 936 S.W.2d 509 (1996).

Against this backdrop, we examine Robbins's Petition to Reopen. Our decision in *Robbins V*, which affirmed Robbins's capital murder and death sentence, was handed down on October 5, 2000. The mandate was issued on October 24, 2000. Almost two years later, Robbins petitions this court to reopen his case and alleges that a mistake was made by this court in failing to recognize that the jury was inconsistent in its completion of Verdict Form 2, which deals with mitigating circumstances. Robbins's counsel attaches what purport to be the inconsistent forms to his Petition to Reopen. According to Robbins, this court reversed a death sentence and remanded the case for resentencing for precisely the same inconsistency in Verdict Form 2 in *Willett v. State, supra*. The State does not respond to this argument but holds firm to its

belief that Robbins's requested relief is procedurally barred at this late date or, alternatively, that this court implicitly decided the issue in our Rule 4-3(h) review in *Robbins V.*

■ The power of an appellate court to recall its mandate, if the circumstances warrant it, is recognized both in federal courts and state courts across the country. *See, e.g., Calderon v. Thompson,* 523 U.S. 538 (1998); *Dye v. Kansas State Supreme Court,* 48 F.3d 487 (10th Cir. 1995) (agreeing that the Kansas Supreme Court's decision to recall the mandate and review a decision of the Kansas Court of Appeals, which had reversed convictions for possession of cocaine and marijuana, was appropriate in order to correct a mistake in its previous order). In *Calderon,* the Court said:

> Although some Justices have expressed doubt on the point, see, *e.g., United States v. Ohio Power Co.,* 353 U.S. 98, 102-103 (1957) (Harlan, J., dissenting), the courts of appeals are recognized to have an inherent power to recall their mandates, subject to review for an abuse of discretion. *Hawaii Housing Authority v. Midkiff,* 463 U.S. 1323, 1324 (1983) (REHNQUIST, J., in chambers); see also *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 249-250 (1944). In light of "the profound interests in repose" attaching to the mandate of a court of appeals, however, the power can be exercised only in extraordinary circumstances. 16 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3938, p. 712 (2d ed.1996). The sparing use of the power demonstrates it is one of last resort, to be held in reserve against grave, unforeseen contingencies.

523 U.S. at 549-50. *Calderon* was a *habeas corpus* case in federal court, and the Court concluded that recalling a mandate was an abuse of discretion in a *habeas* case unless the court of appeals acted to "avoid a miscarriage of justice as defined by our *habeas corpus* jurisprudence." 523 U.S. at 558. The Sixth Circuit Court of Appeals has further justified a mandate recall in part "pursuant to our inherent power to protect the integrity of the judicial process within this Circuit." *Demjanjuk v. Petrovsky,* 10 F.3d 338, 357 (6th Cir. 1993). We agree that the federal standard of review is appropriate for our usage.

■ ■ We equate recalling a mandate to reopening a case. This court has a rule relating to the recall of a mandate, Ark. Sup. Ct. R. 5-3(d), but the rule has been used sparingly. Typically, it is invoked in cases where a party seeks to petition the United States

Supreme Court for a writ of *certiorari* after the mandate has issued. In one fairly recent case, this court refused to recall a mandate after the United States Supreme Court issued an opinion on the identical constitutional point, but we did so because the defendant had never challenged the alternative state ground on which this court based its decision. *See State v. Earl*, 336 Ark. 271, 984 S.W.2d 442 (1999) (*per curiam*). The State is incorrect in arguing that there is no precedent for this court to reopen a death case after the mandate has issued, except in cases where the writ of error *coram nobis* is involved. In this very case, this court recalled the mandate, issued on December 22, 1998, stayed the execution, and ordered the parties to brief certain issues. *See Robbins III.* The undeniable fact is this court will recall a mandate and reopen a case in extraordinary circumstances.

Thus, the issue confronting this court is whether extraordinary circumstances exist in the instant case. Stated differently, will we reopen this case to decide whether a mistake was made in *Robbins V*, because an issue was allegedly overlooked which would have been reversible error? Robbins argues that we considered the issue he now raises to be fundamental error in *Willett v. State, supra*, and that we reversed Willett's death sentence based on that precise issue. He contends that what was a fundamental error in *Robbins V* is no less fundamental because this court, with the assistance of *amicus* counsel, failed to recognize or address the issue in that opinion.

We have determined that we will set aside the mandate and reopen the case to address this issue. We hasten to add that we are doing so solely because of the unique circumstances of this case. There is first the fact that a decision has been cited to this court, *Willett v. State, supra*, which is on all fours legally with the issue presented in the instant case. Whether it is similar factually has yet to be determined. There is, secondly, the fact that the federal district court dismissed Robbins's *habeas corpus* petition because this issue had not been addressed in state court. There is no argument concerning whether the *Willett* issue has been expressly addressed by this court. It has not been. There is, lastly, the fact that this is a death case where heightened scrutiny is required. These circumstances combine to make this case *sui generis*. Indeed, we consider this case to be one of a kind, not to be repeated. In sum, where a recent case is cited to this court

which was handed down prior to *Robbins V* and which is directly contrary to Robbins's death sentence, the issue must be reviewed.

We are also mindful of the fact that it is now incumbent on the states to do a comprehensive state-court review in all death cases in order to eliminate the need for multiple federal *habeas corpus* proceedings. Arkansas Rule of Criminal Procedure 37.5 was adopted by this court and evolved from Act 925 of 1997, now codified at Ark. Code Ann. §§ 16-91-201 to 206 (Supp. 1999), and expressly recognizes this policy in favor of thorough state-court review. *See Echols v. State, supra; Wooten v. State*, 338 Ark. 691, 1 S.W.3d 8 (1999). Were this court to refuse to examine a claim that fundamental error was overlooked in a death case, where within the past eight years this court has reversed a death sentence for precisely that same error in the jury verdict forms, we would not be fulfilling our obligation to complete a thorough state review under our rules and state law.

The State argued zealously at oral argument that reopening this case will, in effect, open the floodgates to all manner of suits by deathrow inmates. We disagree. We repeat that the circumstances of this case are unique and that we are recalling the mandate and reopening this death case solely because of (1) the alleged comparable verdict form deficiency in the *Willett* case, (2) the federal district court's dismissal of the federal *habeas corpus* petition in order to give state courts the opportunity to explore this issue, and (3) the enhanced scrutiny that we require in death cases.

■ There is one other matter of concern to this court. The original Verdict Forms on sentencing, which were completed by the jury, are not in the record. Only copies of those verdict forms are included. We, therefore, issue a writ of *certiorari* and order that the record in this case be supplemented with the original Verdict Forms 1, 2, and 3. *See Anderson v. State*, 351 Ark. 675, 100 S.W.3d 48 (2003) (*per curiam*). When the supplemental record is filed, we direct rebriefing by the parties and specifically direct the State to address the substance of Robbins's claim that he should be resentenced. We further direct the parties to address in their rebriefing of the *Willett* issue whether *Willett v. State, supra* is still good law in light of this court's opinion in *Jones v. State*, 329 Ark. 62, 947 S.W.2d 339 (1997) and our discussion in that case of

*Skipper v. South Carolina*, 476 U.S. 1 (1986) and Ark. Code Ann. § 5–4–603(d) (Repl. 1997).

Motion to Reopen granted. Writ of *Certiorari* issued. Rebriefing ordered.

GLAZE AND IMBER, JJ., dissent.

CORBIN, J., not participating.

TOM GLAZE, Justice, dissenting. I realize the majority court in this matter is trying to resolve a belated issue now being raised by Robbins; however, his remedy, if he has one, is in the federal courts. This case has been before us six times. In *State v. Robbins*, 342 Ark. 262, 27 S.W.3d 419 (2000), it appeared that Robbins obtained a final decision. There, this court gave him an automatic review of his murder conviction and death sentence, even though he confessed to the murder and waived all of his rights, stating that he wanted the death penalty. An abbreviated review of the evidence is helpful to understand why this case remains before us.

Robbins indisputably murdered his former girlfriend, Bethany White, in an especially cruel and depraved manner. He planned the murder for several weeks, and wrote his plans in a journal kept on his computer. Robbins drove from Fayetteville to Jonesboro to encounter Bethany, and chose the time and place (her home) to kill Bethany when she was alone. When Bethany refused to allow him in her house, he forced his way inside. Robbins hit Bethany and strangled her until his hands turned blue. He then broke Bethany's neck by twisting it. Because Robbins was still uncertain of her death, he took a kitchen knife and attempted to thrust it up her nasal passage to "scramble her brains." Next, Robbins took duct tape and wrapped it over Bethany's mouth and nose, so no air could enter; the medical examiner later opined Robbins had succeeded in suffocating Bethany.

After killing Bethany, Robbins went upstairs, found a decorative or novelty sword, and returned downstairs where he tried to thrust the sword through her heart, but the sword bent and would not penetrate her chest. Robbins then placed a fortune cookie on Bethany's chest that read, "You will soon have an opportunity to make a change to your advantage." Robbins, while smoking and

drinking a soda, remained to be sure Bethany was dead. He then left Bethany's body for her mother to find.

Robbins subsequently chose to waive his right to court-appointed counsel, so he could proceed *pro se* and seek the death penalty. The trial court still assigned Robbins standby counsel, even though Robbins was found competent to stand trial, and found he had the capacity to choose between life and death. On appeal, this court gave Robbins an automatic review, and affirmed the trial court's findings. This court also held that, after an analysis of the adverse rulings on objections, motions, and requests made under Ark. Sup. Ct. R. 4-3(h), the record revealed no prejudicial error; nor did the record show any *Wicks* exceptions to the rule in Arkansas that an argument for reversal will not be considered in the absence of an appropriate contemporaneous objection in the trial court.

Sometime after this court's decision affirming Robbins's capital-murder conviction and death sentence, Robbins had a change of mind; he obtained counsel to challenge this court's decisions by filing a petition for writ of habeas corpus in the federal district court. As the majority opinion states, the federal district court dismissed Robbins's petition until that court knew Robbins had exhausted his state remedies. Those remedies, in my opinion, were exhausted when Robbins chose not to file a petition for rehearing in this court's last decision, *Robbins v. State*, 342 Ark. 262, 27 S.W.3d 419 (2000).

Robbins fails to suggest any rule, statute, or case which provides him the right to reopen his case for reconsideration of this court's final decision after the court's mandate was handed down. He merely refers to this court's inherent authority, but mentions no case law that supports his position. In fact, our law is to the contrary that, once this court's mandate is handed down, the disposition becomes final. *See Johnson v. State*, 321 Ark. 117, 136, 900 S.W.2d 940, 951 (1995). Here, Robbins simply failed to file a timely petition for rehearing.

The State poses the problem that, if this court reopens this case after the mandate has issued, appeals like this will never end because every convicted murderer will point out that he or she has been denied a fundamental right, and therefore, his or her case should be reopened. I agree. The majority court has tried to nar-

row the scope of its decision to reopen the case, but, in doing so, its opinion reflects that a case can be reopened when a "fundamental error" is shown to exist. However, such language is unfortunate and ambiguous because "fundamental error" is a term our Arkansas appellate courts use to explain why they do not recognize "plain error." In other words, "fundamental error" and plain error are essentially the same. *See Buckley v. State*, 349 Ark. 53, 76 S.W.3d 825 (2002) (rejecting arguments that the third and fourth *Wicks* exceptions suggested a "limited basis for recognition of fundamental and plain error"). Perhaps, the majority means to employ the term "structural error." *See e.g. Reynolds v. State*, 341 Ark. 387. 18 S.W.3d 331 (2000) (failure to object to erroneous jury instruction denied defendant of the right to a jury trial on the elements upon which a conviction for first-degree murder must be predicated); *Calnan v. State*, 310 Ark. 744, 841 S.W.2d 589 (1992) (denial of right to jury trial constituted "structural error"). Nonetheless, I am of the opinion that this court's decision was final when its mandate was issued in this case, so I would deny Robbins's motion to reopen it.

IMBER, J., joins this dissent.