Roger Lewis COULTER *v.* STATE of Arkansas

CR 90–126                                      227 S.W.3d 904

Supreme Court of Arkansas
Opinion delivered February 9, 2006

Bruce D. Eddy, Ass't Fed. Pub. Def., Craig Lambert, and Al Schay, for appellant.

Mike Beebe, Att'y Gen., by: Joseph V. Svoboda, Ass't Att'y Gen., for appellee.

JIM GUNTER, Justice. This case arises from a motion filed by petitioner, Roger Lewis Coulter, on August 17, 2004, to recall the 1991 mandate in his direct appeal and to reopen his case. In his motion, petitioner argues that we should recall the mandate because the Eighth Amendment to the U.S. Constitution prohibits executing the mentally retarded, as decided by the United States Supreme Court in Atkins v. Virginia, 536 U.S. 304 (2002), and asserts that an Atkins claim was unavailable to him at the time of his trial.

Alternatively, petitioner requests that, if we do not recall the mandate, we must create a remedy to permit such a claim under a writ of *error coram nobis*. We deny petitioner's motion to recall the mandate.

On October 27, 1989, petitioner was convicted by the Ashley County Circuit Court of capital murder and sentenced to death for killing a five-year-old girl during the course of, or in furtherance of, raping her. *See* Ark. Code Ann. § 5-10-101 (Supp. 1989). Petitioner did not raise a mental-retardation claim at trial. Dr. William Martin, a psychologist and a member of the Governor's Task Force for Mental Health, testified that, after conducting a series of tests and interviews, he diagnosed petitioner with an antisocial personality disorder and a pattern of heavy alcohol abuse. This diagnosis was confirmed by Dr. Michael Simon, an Arkansas State Hospital psychologist, who testified that petitioner's IQ test score was a 94. Petitioner appealed the jury's verdict, and we affirmed in *Coulter v. State*, 304 Ark. 527, 804 S.W.2d 348 (1991), *cert. denied*, 502 U.S. 829 (1991).

Arkansas's state statute prohibiting the imposition of the death penalty upon persons with mental retardation, codified at Ark. Code Ann. § 5-4-618(b) (Repl. 1997), became effective on August 12, 1993.

On December 3, 1991, petitioner filed a Rule 37 petition for postconviction relief, and did not raise a claim of mental retardation. An amended petition for postconviction relief was filed on August 17, 1993, and a supplemental petition on August 18, 1993. In both subsequent petitions, petitioner raised an additional claim of ineffective assistance of counsel for failure to obtain a diagnosis of paranoid schizophrenia from petitioner's prior Arizona prison records. Several motions for continuance were filed, and the circuit court denied the Rule 37 petition on October 5, 1999. From the record, it appears that petitioner never made a claim of mental retardation during his Rule 37 proceedings. We affirmed the circuit court's denial of petitioner's request for postconviction relief in *Coulter v. State*, 343 Ark. 22, 31 S.W.3d 826 (2000).

Petitioner sought federal *habeas corpus* relief on October 1, 2001, in federal district court. In June of 2002, while petitioner's federal *habeas* case was pending, the United States Supreme Court overruled *Penry v. Lynaugh*, 492 U.S. 302 (1989) (holding that the execution of mentally retarded persons was constitutionally permissible under the Eighth Amendment of the U.S. Constitution),

and held in *Atkins, supra*, that the execution of mentally retarded criminal defendants was cruel and unusual punishment prohibited by the Eighth Amendment of the U.S. Constitution. On June 17, 2003, following the Supreme Court's decision in *Atkins*, petitioner moved to file an amended petition for writ of *habeas corpus*, claiming that he had mental retardation and that his execution would violate the Eighth Amendment. In support of his mental-retardation claim, he cited his low birth weight due to a premature birth, maternal deprivation due to poverty, and his mother's delivery of a second child in the same year as his birth. The federal district court granted petitioner's motion, and he filed an amended petition for writ of *habeas corpus* in federal district court on September 16, 2003. The federal district court entered an order on May 25, 2004, dismissing petitioner's *Atkins* claim, staying his federal claims, and directing him to exhaust his *Atkins* claim in state court within ninety days before federal relief could be granted.

On August 17, 2004, petitioner filed his motion to recall the mandate, or alternatively, for a writ of *error coram nobis* with our court. We ordered that the motion be submitted as a case, and briefs were later submitted in support of the motion. We now consider petitioner's motion to recall the mandate.

Petitioner argues that the Eighth Amendment to the Federal Constitution requires a procedure by which he may raise a claim that he is ineligible for execution because he was sentenced to death prior to the enactment of Ark. Code Ann. § 5-4-618 and prior to the Supreme Court's *Atkins* holding. Under this general argument, petitioner advances three specific arguments. First, petitioner contends that we should authorize him to file a petition for postconviction relief, pursuant to Ark. R. Crim. P. 37.1, containing his claim of mental retardation. Second, petitioner asserts that, if this court declines to recall the mandate and allows him to re-file a Rule 37 petition, we should permit him to file a petition for writ of *error coram nobis* containing his claim for mental retardation. Lastly, petitioner requests this court to order that the circuit court proceedings follow the statutory scheme of Ark Code Ann. § 5-4-618.

The State responds, arguing that petitioner mischaracterizes the *Atkins* holding and that the United States Supreme Court did not hold that states must establish a court procedure specifically for the purpose of allowing death-row inmates to raise a claim for mental retardation. The State agrees that petitioner could not have relied upon Ark. Code Ann. § 5-4-618 to raise a mental-

retardation claim because the statute was enacted after his trial. However, the State disagrees with petitioner's argument that he could not have raised a claim under Ark. Code Ann. § 5-4-618 in his Rule 37 petition, that he had no means to raise a mental retardation claim prior to *Atkins*, and that "*Atkins* requires Arkansas to have a state procedure whereby he has an absolute right to raise a claim of mental retardation" through a Rule 37 petition or a writ of *error coram nobis*.

The issue is whether extraordinary circumstances exist to warrant recalling the mandate and opening petitioner's case. We recalled our mandate in *Robbins v. State*, 353 Ark. 556, 114 S.W.3d 217 (2003) (*Robbins VI*), and recognized that the death penalty demands unique attention to procedural safeguards. *Robbins*, 353 Ark. at 561, 114 S.W.3d at 220. Robbins petitioned our court to recall the mandate and to reopen his case because he alleged that we failed to recognize that the jury was inconsistent in completing Verdict Form 2, which dealt with mitigating circumstances. *Robbins*, 353 Ark. at 562, 114 S.W.3d at 221. The State maintained that his claim was barred, particularly in light of our Rule 4-3(h) review of Robbins's case. *Robbins*, 353 Ark. at 560, 114 S.W.3d at 220.

In *Robbins VI*, we held that the mandate should be recalled and the case reopened for three reasons. First, we recognized that our decision in *Willett v. State*, 322 Ark. 613, 911 S.W.2d 937 (1995), might require resentencing, as there was an alleged comparable verdict-form deficiency in *Willett*. *Robbins*, 353 Ark. at 565, 114 S.W.3d at 223. Second, we acknowledged that the federal district court dismissed Robbins's *habeas corpus* petition because the verdict-form issue had not been addressed in our court, notwithstanding that there had been five appellate reviews by our court. *Id.*; *see also State v. Robbins*, 342 Ark. 262, 27 S.W.3d 419 (2000) (*Robbins V*) (holding that no Rule 4-3(h) errors, *Wicks* errors, or errors implicating other fundamental safeguards occurred during the trial); *State v. Robbins*, 339 Ark. 379, 5 S.W.3d 51 (1999) (*Robbins IV*) (holding that, in death-penalty cases, we must conduct an independent review of the record to determine whether errors occurred under Rule 4-3(h), whether any *Wicks* violations occurred, or whether fundamental safeguards were in place during the trial); *State v. Robbins*, 337 Ark. 227, 987 S.W.2d 709 (1999) (*Robbins III*) (recalling the mandate, staying the execution, and ordering briefing from Robbins and the State); *State v. Robbins*, 336 Ark. 377, 985 S.W.2d 296 (1999) (*per curiam*) (*Robbins*

*II)* (waiving his right to seek Rule 37 postconviction relief); *State v. Robbins*, 335 Ark. 380, 985 S.W.2d 293 (1998) (*Robbins I*) (*per curiam*) (waiving his right to an appeal). Third, we emphasized that a heightened scrutiny is required in a death-penalty case. *Robbins*, 353 Ark. at 565, 114 S.W.3d at 223. Finally, we noted that the original verdict forms were not included in the record. We issued a writ of certiorari and ordered that the record be supplemented with the original verdict forms. *Id.*

Keeping our reasoning in *Robbins, supra,* in mind, we now turn to the question of whether we should recall the mandate in petitioner's case. Here, petitioner grounds his argument in *Atkins, supra,* which we discussed at length in *Anderson v. State,* 357 Ark. 180, 215-16, 163 S.W.3d 333, 354-55 (2004), where we stated:

> In *Atkins v. Virginia, supra,* the United States Supreme Court took note of the fact that many states, including Arkansas, had enacted statutes prohibiting the execution of mentally-retarded offenders. The Court observed that "[n]ot all people who claim to be mentally retarded will be so impaired as to fall within the range of mentally retarded offenders about whom there is a national consensus." 536 U.S. at 317, 122 S. Ct. 2242. The Court then specifically said that as was the Court's approach with regard to insanity, "we leave to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences." *Id.* (quoting *Ford v. Wainwright,* 477 U.S. 399, 405, 416-17, 106 S. Ct. 2595, 91 L. Ed. 2d 335 (1986)). The Court found that its death penalty jurisprudence provided "two reasons consistent with the legislative consensus that the mentally retarded should be categorically excluded from execution." *Id.* at 318, 122 S. Ct. 2242. First, the Court noted, "there is a serious question as to whether either justification that we have recognized as a basis for the death penalty applies to mentally retarded offenders." *Id.* at 318-19, 122 S. Ct. 2242 (referring to retribution and deterrence as the social purposes served by the death penalty). But also, it said "[t]he reduced capacity of mentally retarded offenders provides a second justification for a categorical rule making such offenders ineligible for the death penalty." *Id.* at 320, 122 S. Ct. 2242. The Court concluded that it saw "no reason to disagree with the judgment of 'the legislatures that have recently addressed the matter' and concluded that death is not a suitable punishment for a mentally retarded criminal." *Id.* at 321, 122 S. Ct. 2242.
>
> We believe that the Court in *Atkins* merely reaffirmed this State's preexisting prohibition against executing the mentally re-

tarded. Section § 5-4-618(b), which is part of Act 420 of 1993, provides that no defendant with mental retardation at the time of committing capital murder shall be sentenced to death.

*Anderson*, 357 Ark. at 215-16, 163 S.W.3d at 354-55.

Arkansas's statute prohibiting the execution of criminal defendants with mental retardation, codified at Ark. Code Ann. § 5-4-618, establishes a rebuttable presumption of mental retardation when a defendant has an intelligence quotient of sixty-five or below. *See* Ark. Code Ann. § 5-4-618(a)(2) (Repl. 1997). The statute specifically places the burden on the defendant to prove mental retardation at the time of committing the offense by a preponderance of the evidence. *See* Ark. Code Ann. § 5-4-618(c).

We have declined to recall the mandate to determine a mental-retardation claim in post-*Atkins* cases, such as *Echols v. State*, 360 Ark. 332, 202 S.W.3d 1 (2005), and *Engram v. State*, 360 Ark. 140, 200 S.W.3d 367 (2004). *See also Hill v. State*, 362 Ark. 659, 210 S.W.3d 123 (2005) (*per curiam*). In *Engram, supra*, the federal district court directed Engram to dismiss his *habeas corpus* petition without prejudice so that he could exhaust his state claim of mental retardation. Engram filed his motion to recall the mandate, and we denied the motion, holding that Engram's case was factually and legally distinguishable from the *Robbins* case, that Engram had already sought Rule 37 relief, and that state *habeas* relief was not appropriate. *Engram, supra*. Similarly, in *Echols*, we noted that Echols made no showing that he satisfied the *Robbins* criteria other than the fact that his case was a death-penalty case. Citing *Engram, supra*, Echols never established that his case comported with the three "unique circumstances" outlined in *Robbins VI*, nor did he point to an error made either at the appellate level or at the trial level.

█ Here, in light of our precedent in *Engram, supra*, and *Echols, supra*, petitioner fails to meet the criteria outlined in *Robbins, supra*, to warrant a recall of our 1991 mandate. First, petitioner has failed to establish that the facts of his case comport with the three "unique circumstances" enumerated in *Robbins; supra*. Rather, petitioner only satisfies the third *Robbins* factor in that it is a death-penalty case. Petitioner has failed to raise any error by the circuit court or the appellate court, such as the verdict-form errors in *Robbins, supra*.

█ Second, petitioner failed to raise the claim of mental retardation until he filed for *habeas* relief in federal court. At trial,

Dr. Martin testified that petitioner had an antisocial personality disorder and a diagnosis of alcohol abuse. These conditions were set forth in a letter signed by Dr. Simon to the circuit court. Dr. Simon testified that he scored a 94 on his IQ test. Neither witness alluded to a diagnosis of mental retardation at trial, and it was never presented as mitigating evidence. Further, petitioner failed to raise the mental-retardation claim in his Rule 37 petition filed in 1991, nor did he include the claim in his supplemental and amended petitions in 1993, the year that Ark. Code Ann. § 5-4-618 was enacted. The circuit court's order denying postconviction relief was entered in 1999. Thus, petitioner failed to raise the mental-retardation claim during the eight-year interim between the filing of his Rule 37 petition in 1991 and the filing of the circuit court's order in 1999.

Finally, under Ark. Code Ann. § 5-4-618, petitioner did not meet the rebuttable presumption of having mental retardation. Under subsection (2), "[t]here is a rebuttable presumption of mental retardation when the defendant has an intelligence quotient of sixty-five (65) or below." *Id.* Here, in a retroactive application of the statute, petitioner operated at an IQ of 94, according to the testimony of Dr. Simon, at the time of the offense. Petitioner's IQ score of 94 is substantially above the statutory threshold. Therefore, based upon the foregoing reasons, we deny petitioner's motion to recall the mandate and his request to file another Rule 37 petition containing a claim of mental retardation under *Atkins, supra.*

For his second argument, petitioner alternatively asserts that we should permit him to file a petition for writ of *error coram nobis* containing his mental-retardation claim in the event that we deny additional postconviction relief.

A writ of *error coram nobis* is an extraordinarily rare remedy, more known for its denial than its approval. *Larimore v. State,* 341 Ark. 397, 17 S.W.3d 87 (2000). The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Pitts v. State,* 336 Ark. 580, 986 S.W.2d 407 (1999). For a writ of *error coram nobis* to issue following the affirmance of a conviction, the petitioner must show a fundamental error of fact extrinsic to the record. *Larimore v. State,* 341 Ark. 397, 17 S.W.3d 87 (2000). A writ of *error coram nobis* is appropriate only when an issue was not addressed or could not have been addressed at trial because it was somehow hidden or

unknown and would have prevented the rendition of the judgment had it been known to the trial court. *Id.*

We have held that a writ of *error coram nobis* was available to address certain errors of the most fundamental nature that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. *Pitts, supra* (citing *Penn v. State,* 282 Ark. 571, 670 S.W.2d 426 (1984)). *Coram nobis* proceedings are attended by a strong presumption that the judgment of conviction is valid. Newly discovered evidence in itself is not a basis for relief under *coram nobis. Larimore, supra; Smith v. State,* 301 Ark. 374, 784 S.W.2d 595 (1990).

■ Here, petitioner fails to advance the argument either in his motion or his brief in support that his case fits under the four aforementioned categories of *error coram nobis.* Rather, petitioner asserts in conclusory fashion that the extraordinary writ "is well suited as a remedy for the narrow class of capital cases in which the Eighth Amendment bars execution because the defendant suffers from mental retardation, but the claim was not raised or adjudicated at the time of trial because neither the constitutional nor the statutory prohibition on the execution of the mentally retarded was in effect." He further emphasizes the necessity of a procedure "for a post-appeal determination of whether a defendant suffers from the disability . . . [.]" These contentions do not fall within the four categories outlined in *Pitts, supra.* After reviewing the instant motion, we hold that petitioner has not stated good cause to grant leave to proceed with a petition for writ of *error coram nobis* in the circuit court.

For his third argument, petitioner argues that we should order that the circuit court proceedings follow the statutory scheme of Ark. Code Ann. § 5-4-618. Specifically, petitioner asserts that we should order that he "is to raise the issue in his pleading to the trial court, in accordance with Ark. Code Ann. § 5-4-618(d)(1)." Petitioner seeks to remand the proceedings to the circuit court for a determination of whether the petitioner is an individual with mental retardation. *See* Ark. Code Ann. § 5-4-618(d)(2). Because we deny petitioner's motion to recall the mandate, we are precluded from reaching the merits of his final argument.

Based upon the controlling precedent of *Robbins, supra*, as well as our well established case law regarding the writ of *error coram nobis*, we hold that petitioner has exhausted his state remedies. Accordingly, we deny petitioner's motion to recall the mandate and reinvest the circuit court with jurisdiction to consider a Rule 37 petition or a writ of *error coram nobis*.

Motion denied.