# SUPREME COURT OF ARKANSAS

Nos. CR-92-1385 & CR-00-528

| | | |
|---|---|---|
| DON WILLIAM DAVIS | | **Opinion Delivered:** April 17, 2017 |
| | APPELLANT | MOTION TO RECALL THE MANDATE AND FOR STAY OF EXECUTION [BENTON COUNTY CIRCUIT COURT NO. CR-91-80-1] |
| V. | | |
| STATE OF ARKANSAS | | |
| | APPELLEE | |
| | | <u>DISSENTING OPINION</u>. |

**SHAWN A. WOMACK, Associate Justice**

Don William Davis and Bruce Earl Ward ask us to recall the mandates in their capital murder cases and stay their executions.[1] Davis comes to us on what appears to be at least the 29th appellate review of his case (either individually or collectively with other litigants) since the murder of 62-year-old Jane T. Daniel on October 12, 1990. Similarly, Ward appears before this court after an exhaustive list of appeals and after being sentenced to death by three separate juries for the August 11, 1989, murder of 18-year-old Rebecca Lynn Doss. Their argument can be stated concisely: The state and federal courts involved in their cases have grievously misinterpreted the United States Supreme Court's holding in *Ake v. Oklahoma*, 470 U.S. 68 (1985). I would deny these motions for three independently

---

[1] Davis and Ward filed their motions jointly due to the identical legal arguments presented, but this court has chosen to dispose of them separately. As such, I address the history and claims of both movants together.

sufficient reasons. First, our precedent firmly establishes that we have ruled on this precise issue and held their view of *Ake* is wrong. Second, it has not been the practice of this court to grant the extraordinary relief they request in similar circumstances. Third, even if the Supreme Court decides *McWilliams* in precisely the way that the petitioners predict, it is not clear that Davis or Ward will have any avenues for relief.

First, *Ake* held that criminal defendants are constitutionally entitled to "access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." *Id.* at 83. Petitioners argue that this language requires that the state pay for a psychiatrist assigned exclusively to assist the defense rather than a neutral evaluator. Davis previously argued this same point before the trial court, this court on direct appeal,[2] this court in his petition for postconviction relief,[3] the federal district court, and the United States Court of Appeals for the Eighth Circuit.[4] Ward also made the argument before the trial court, this court during the course of his multiple direct appeals,[5] postconviction petition,[6] and federal habeas action.[7] Notably, we addressed this exact argument in Ward's prior attempts to have us recall his mandate, which became the law of the case.[8] Davis and Ward both assert that their psychiatric evaluations in the state hospital do not meet the *Ake* requirement. This court has consistently held that the state's protocol

---

[2] *Davis v. State*, 314 Ark. 257, 265, 863 S.W.2d 259, 269 (1993).

[3] *Davis v. State*, 345 Ark. 161, 170, 44 S.W.3d 726, 731 (2001).

[4] *Davis v. Norris*, 423 F.3d 868, 875 (8th Cir. 2005).

[5] *Ward v. State*, 308 Ark. 415, 827 S.W.2d 110 (1992); *Ward v. State*, 321 Ark. 659, 906 S.W.2d 685 (1995); *Ward v. State*, 338 Ark. 619, 1 S.W.3d 1 (1999).

[6] *Ward v. State*, 350 Ark. 69, 84 S.W.3d 863 (2002).

[7] *Ward v. Norris*, 577 F.3d 925 (8th Cir. 2009).

[8] *Ward v. State*, 2015 Ark. 60, 455 S.W.3d 303; *Ward v. State*, 2015 Ark. 61, 455 S.W.3d 818.

satisfies the requirements of *Ake. See, e.g.*, *Branscomb v. State*, 299 Ark. 482, 774 S.W.2d 426 (1989). As Davis demonstrates in his petition, we are in a minority on this issue but by no means alone. *See Woodward v. Epps*, 580 F.3d 318 (5th Cir. 2009); *McWilliams v. Comm'r Ala. Dep't of Corr.*, 634 F. App'x 698 (11th Cir. 2015); *Woodward v. State*, 726 So. 2d 524 (Miss. 1997).

Second, even the movants recognize that neither a motion to recall the mandate nor to stay an execution is the appropriate forum to reargue a point of constitutional interpretation that this court has already addressed to exhaustion. The overriding interest in the finality of judgments limits these remedies to exceedingly narrow circumstances. We have looked at requests to recall mandates with such skepticism that we have described some of the rare instances in which we grant the relief as "one of a kind, not to be repeated." *Robbins v. State*, 353 Ark. 556, 564, 114 S.W.3d 217, 223 (2003). Instead of bare restatement of their underlying interpretive claims, then, they argue that the United States Supreme Court's decision to grant certiorari in *McWilliams v. Dunn*, 634 F. App'x 698 (11th Cir. 2015), *cert. granted*, __ U.S. __, 137 S. Ct. 808 (2017), overleaps our high bar and requires us to grant their motions, at least until that case has been argued and decided by Supreme Court.

Movants cannot point to a controlling statement that this court recalls mandates or stays executions due to the speculative outcome of a pending argument before the United States Supreme Court. This is because such precedent does not exist. In *Pickens v. Tucker*, 316 Ark. 811, 875 S.W.2d 835 (1994), this court denied a stay of execution through a per curiam opinion. As the concurrence makes clear, we denied the stay even though an active

petition for certiorari in *Otey v. Hopkins*, 5 F.3d 1125 (8th Cir. 1993), was before the Supreme Court and the case involved legal issues similar to the ones in *Pickens*. *Id*. (Brown, J., concurring). In *State v. Earl*, 336 Ark. 271, 984 S.W.2d 442 (1999), we even declined to recall a mandate when the Supreme Court *had already ruled* on the arguably related case, which held that a traffic stop similar to the one in Earl's case violated the Fourth Amendment. *Id*. The majority declined to recall the mandate due to Earl's failure to challenge the disputed rule in the original proceeding, while the dissenting justices argued for recall of the mandate in light of Earl's brisk action following the new Supreme Court precedent. *Id*. Given our reluctance to recall the mandate when we had the conflicting Supreme Court opinion squarely in front of us, I would decline to do so here based solely on reading the tea leaves about how the Court might act in *McWilliams*.

Third, I am convinced that the majority's decision to grant the petition is based on the mistaken assumption that movants' boldly predicted outcome in *McWilliams* will have any impact on their available remedies. It is the rule both generally and in the habeas context that new rules of law announced by the Supreme Court apply to cases still on direct review, but only retroactively in a narrow set of circumstances. *See, e.g.*, *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97 (1993). Movants can muster only that the question of retroactivity under Arkansas law is "unresolved" and that "[t]his case presents an opportunity for the Court to determine that question." They argue that a favorable outcome in *McWilliams* would not be a new rule, but instead a simple clarification that this state and other jurisdictions adopting a similar view of *Ake* have been in clear violation of the plain language of that opinion. I disagree. If the Supreme Court determines that over 30 years of practice

by this and other states in applying *Ake*'s commands about psychiatric evaluations has been constitutionally inadequate, that is a new rule of constitutional law of the sort not typically applied retroactively.

On a final note, and of no less importance, the majority, in a 4–3 decision, is granting relief to the two individuals who were convicted of murdering Rebecca Lynn Doss and Jane T. Daniel. The petitioners had their day in court, the jury spoke, and decades of appeals have occurred. The families are entitled to closure and finality of the law. It is inconceivable that this court, with the facts and the law well established, stays these executions over speculation that the Supreme Court might change the law. This court has a duty to apply the laws of Arkansas as they exist today. While the Supreme Court could certainly change the law on any given day, that does not mean we can ignore our responsibility and refuse to perform our duty. Today, justice has been denied by the majority.

I dissent.

WOOD, J., joins in this dissent.